The **PEOPLE** of the State of Colorado, In the Interest of **G.M.**, a Child,

and Concerning **F.M.** and **N.M.**, Respondents.

**COLORADO DEPARTMENT OF SOCIAL SERVICES,** Appellee,

v.

**MONTEZUMA COUNTY DEPARTMENT OF SOCIAL SERVICES,** Appellant.

**No. 91CA1950.**

Colorado Court of Appeals, Div. II.

Dec. 31, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Wade Livingston, First Asst. Atty. Gen., Denver, for appellee.

Bob D. Slough, Cortez, for appellant.

Opinion by Judge PIERCE.

The Montezuma County Department of Social Services (county) appeals from an order of the district court requiring the Colorado Department of Social Services (department) to reimburse the county for only 80% of its allowable expenditures for foster care of G.M. We affirm.

The facts are not in dispute. G.M., a minor child, was placed in foster care by order of the district court. Subsequently, the county filed a motion seeking reimbursement from the department for 100% of its allowable expenditures for the foster care of G.M., based upon certain 1990 amendments to the statutes relating to the funding of foster care. The district court denied the motion and awarded the county 80% of its allowable expenditures for foster care.

I.

On appeal, the county concedes that prior to 1990, reimbursement was limited to 80% of allowable foster care expenditures under § 19–1–116(1), C.R.S. (1986 Repl.Vol. 8B). However, it contends that under the 1990 amendments to § 19–1–116, the department is required to reimburse counties for their "total expenditure" for foster care. Therefore, it concludes, the district court erred in ordering the department to reimburse 80% of its allowable expenditures for foster care. We disagree.

Prior to 1990, counties received a fixed annual allocation for foster care expenditures. Section 19–1–116(1), then in effect, provided, in pertinent part, that:

> The state board of social services shall adopt a method for allocating to county departments of social services funds appropriated for foster care. ... The amount thus allocated to each county shall represent the maximum expenditure by an individual county for foster care and for alternative services provided in conformance with the plan prepared and approved pursuant to paragraph (b) of subsection (2) and subsection (4) of this section which may be reimbursed. The state board of social services shall evaluate annually the adequacy of the allocation method and make revisions to the method only after all concerned counties and agencies have had adequate opportunity to comment.

Any expenditures exceeding the allocation were borne entirely by the county. *See Colorado Department of Social Services v. Board of County Commissioners*, 697 P.2d 1 (Colo.1985).

In 1990, the General Assembly amended § 19–1–116, among other things, to eliminate the allocation method of funding fos-

ter care under § 19–1–116. *See* Colo.Sess. Laws 1990, ch. 136 at 1013, et seq. Colo. Sess.Laws 1990, ch. 136 § 19–1–116(1) at 1013 provided, in pertinent part, that:

> The state department of social services shall reimburse allowable expenses to county departments of social services for foster care. The state department's budget request for foster care shall be based upon the actual aggregate expenditure of federal, state, and local funds of all counties during the preceding twenty-four months on foster care. ... *The amount thus reimbursed to each county shall represent the total expenditure by an individual county for foster care and alternative services* provided in conformance with the plan prepared and approved pursuant to paragraph (b) of subsection (2) and subsection (4) of this section. (emphasis supplied)

The county contends that the insertion of the word "total" before "expenditure" in the 1990 amendments to § 19–1–116(1) demonstrates a legislative intent to require the department to reimburse counties for 100% of their allowable expenditures for foster care. Moreover, while reference to the 80% reimbursement was retained for "alternative services" in § 19–1–116(2)(e), C.R.S. (1986 Repl.Vol. 6B), similar language was omitted in those portions of the statute relating to reimbursement for foster care. *See* Colo.Sess. Laws 1990, ch. 136, at 1015 (repealing § 19–1–116(2)(d), C.R.S. (1986 Repl.Vol. 6B)). Therefore, the county concludes, the General Assembly intended to distinguish between foster case, for which 100% reimbursement is provided, and "alternative services," for which only 80% reimbursement is provided. We are not persuaded.

█ In interpreting a statute, our primary objective is to ascertain and give effect to the intent of the General Assembly. *Smith v. Myron Stratton Home,* 676 P.2d 1196 (Colo.1984). To determine the legislative intent, we must first look to the language of the statute itself. Statutory language should be given effect according to its plain and literal meaning, unless to do

so would lead to absurd results. *People v. Bowman,* 812 P.2d 725 (Colo.App.1991).

█ If the language of the statute is unclear, we may look to the rules of statutory construction to determine the intent of the legislature. *People v. Terry,* 791 P.2d 374 (Colo.1990). In addition, the legislative history of the statute may be useful in determining legislative intent. *Bynum v. Kautzky,* 784 P.2d 735 (Colo.1989).

The 1990 amendments to § 19–1–116 do not directly address the rate at which the department must reimburse counties for allowable expenditures for foster care. Section § 19–1–116, as amended, provides the amount reimbursed to each county "shall represent the *total expenditure*" of that county for foster care. However, the 1990 amendments did not alter the language of § 26–5–104, C.R.S. (1989 Repl. Vol. 11B), which provides that: "The state department [of social services] shall, within the limits of available appropriations, reimburse the county departments *eighty percent* of amounts expended by the county departments for child welfare services, as authorized by this article." "Child welfare services" is further defined by § 26–2–103(11), C.R.S. (1989 Repl.Vol. 11B), as including "foster care."

█ Because § 19–1–116, as amended, and § 26–5–104 are apparently in conflict, we must attempt to harmonize the statutes in order to give effect to their respective purposes. *Fleet Real Estate Funding Corp. v. Koch,* 805 P.2d 1206 (Colo.App. 1991). If the plain meaning of statutory language would create a contradiction, the intent of the framers must prevail over the plain usage. *See People v. Bowman, supra.*

█ During the debates in the General Assembly concerning the 1990 amendments, it was recognized that the requirement that the county contribute 20% of the cost of child welfare services would remain in effect. *See* Hearings on S.B. 90–96, Before the Senate Health Committee, 57th General Assembly, 2d Session (Feb. 25, 1990). Moreover, the "Fiscal Note" accompanying the 1990 amendments, prepared by

the Legislative Council Staff, states that "[f]or foster care, the 80% share of the increase to the state program, which is from the general fund ... would represent the amount that counties would not have to pay under the proposed bill." The "Fiscal Note" also recognizes as one of its "key assumptions" that "an increase in the cost of the state program would be funded as 80% GF [state general funds] and 20% CF (county match)."

Thus, the legislative history surrounding the 1990 amendments to § 19–1–116 indicates that the General Assembly did not intend to eliminate the 20% county contribution for foster care expenditures. In our view, the 1990 amendments are properly harmonized with other statutes relating to the funding of foster care by interpreting the amendments as requiring the department to reimburse counties for 80% of their expenditures for foster care, expenditures which *represent* their "total" expenditure. Therefore, we conclude that the district court did not err in ordering the department to reimburse the county for 80% of its allowable expenditures for foster care.

The order of the trial court is affirmed.

REED and RULAND, JJ., concur.