In re the MARRIAGE OF Rebecca Lynne WARD, Appellee,

and

Scott Joseph Ward, Appellant,

and Concerning Department of Social Services for Fremont County, Intervenor–Appellee.

No. 92CA0331.

Colorado Court of Appeals, Div. V.

June 10, 1993.

No appearance for appellee.

Larry Dean Allen, Canon City, for appellant.

Brenda L. Jackson, County Atty., Jeffrey F. Manning, Sp. Asst. County Atty., Canon City, for intervenor-appellee.

Opinion by Judge BRIGGS.

Scott Joseph Ward (father) appeals the judgment of the trial court determining that he was obligated to pay to the Fremont County Department of Social Services (Department) the full amount of public assistance which had been paid on behalf of his minor child. We affirm.

The marriage of the father and Rebecca Lynne Ward (mother) was dissolved in June 1983. At that time, the trial court decreed: "[N]o child support shall be ordered at this time; however this matter is continued ... for purposes of review and reconsideration regarding child support."

The record of the review hearing in August 1983 shows the father was then living with his parents, working part-time, and not paying any support to the mother, who was receiving public assistance from the county. The trial court vacated the review hearing, finding that it did not appear there was any real change, and concluded: "I have nothing which would allow me to go ahead and enter an order for support."

In 1990, the Department commenced proceedings to obtain reimbursement for public assistance that had been provided for the benefit of the child since 1983 and to establish a support order under § 14–10–115, C.R.S. (1987 Repl.Vol. 6B). The father and the Department reached a stipulation for the payment of prospective child support, and that agreement is not at issue here. However, the father and the Department could not agree whether the provisions of § 14–14–104(1)(a), C.R.S. (1987 Repl.Vol. 6B) or § 14–14–104(1)(b), C.R.S. (1992 Cum.Supp.) applied to establish the

child support debt which the Department sought.

After hearing testimony and legal argument, the trial court determined that no child support "order" had been previously entered and, that, consequently, the Department was entitled to recoup the total amount of public assistance paid on behalf of the minor child pursuant to § 14–14–104(1)(b).

## I.

The father first contends that the trial court's orders of June and August of 1983 were the equivalent of a determination that the appropriate amount of child support due was zero. He argues this constituted an order for purposes of § 14–14–104(1)(a) and that as a result, that section, rather than § 14–14–104(1)(b), applies and he is not responsible for any public assistance paid. We conclude it is unnecessary to determine whether the court's order constituted a "court order directed to a parent" for purposes of § 14–14–104(1)(a) because, under either provision of the statute, the father is liable to the Department for the entire amount of public assistance paid for the benefit of the child.

Section 14–14–104(1), C.R.S. (1992 Cum. Supp.) provides in relevant part:

Any payment of public assistance by a county department of social services made to or for the benefit of any dependent child or children creates a debt ... recoverable by the county as a debt due to the state by the parent or parents who are responsible for the support of the dependent child or children in an amount equal to the amount of public assistance so paid; except that:

(a) *Where there has been a court order directed to a parent,* the child support debt of that parent shall be an amount equal to the amount of public assistance paid *to the extent of the full amount of arrearages under the order.* However, the county department of social services through its delegate child support enforcement unit may petition for modification of the order on the same grounds as a party to the action;

(b) *Where there has been no court order,* the county department of social services ... may initiate a court action to establish the amount of child support debt accrued, and the court, after hearing or upon stipulation and after taking into consideration all relevant factors ..., may enter an order *equal to or more than the amount of public assistance paid.* (emphasis added)

Before its amendment in 1989, § 14–14–104(1)(b) provided that the county department of social services could initiate a court action to establish the amount of child support debt accrued and the court, after considering all relevant factors, could enter an order *"less than,* equal to, or more than the amount of public assistance paid." The provision thus exposed a responsible parent who had not been subject to an initial order to the same liability that would have resulted pursuant to § 14–14–104(1)(a) if there had initially been a court order directed to that parent. In either case, the court could consider, among other things, the financial resources of the responsible parent during the time the public assistance debt was accruing and could limit the repayment obligation to the parent's ability to pay.

The 1989 amendment to § 14–14–104(1)(b) removed the trial court's discretion to enter an order for "less than" the amount of public assistance paid. This amendment was part of the same amendatory legislation changing § 19–4–116(3), C.R.S. (1986 Repl.Vol. 8B), which became part of the Uniform Parentage Act (UPA). The latter amendment allowed the court to include in an order of parentage a provision for recovery of public assistance paid for the benefit of a dependent child pursuant to § 14–14–104, C.R.S. (1986 Repl.Vol. 6B). Section 19–4–116(4), C.R.S. (1992 Cum. Supp.) of the UPA continued to provide that the court in its discretion could limit the parent's liability for past support.

In *People in Interest of A.A.V.,* 815 P.2d 997 (Colo.App.1991), a division of this court construed these statutory provisions together to conclude there is no discretion to

limit the responsible parent's obligation for an accrued public assistance debt.

> While § 19–4–116(4) permits the court to exercise its discretion in limiting 'the father's liability for past support . . . [as] the court deems just,' no such discretion is apparent in the statutes relating to 'child support debt' based upon prior payments of public assistance. Section 19–4–116(3) expressly incorporates by reference the provisions of § 14–14–104, *and the latter statute expressly mandates that such awards be equal to or more than the amount of public assistance paid.*

*People in Interest of A.A.V., supra,* at 999 (emphasis added).

The father does not challenge this interpretation of § 14–14–104(1)(b). He instead argues that § 14–14–104(1)(a) should still be construed to limit a responsible parent's child support debt for public assistance "to the extent of the full amount of arrearages under the order." Thus, if a child support order has been previously entered and there are no arrearages, or if an order has been entered for zero child support, under the father's construction of § 14–14–104(1)(a), the responsible parent is not liable for any part of the public assistance paid for the benefit of the minor child. We reject this analysis.

The plain language of § 14–14–104(1)(a) would support the father's argument. Such a construction would also allow the father to plan for the future according to the obligation previously imposed pursuant to statutory child support guidelines. *See* § 14–10–115. However, when considered in conjunction with § 14–14–104(1)(b) as amended in 1989, the father's interpretation would lead to anomalous results.

For example, if the father pursuant to the court order paid a minimal amount of support, such as $20 per month, *see* § 14–10–115(10)(a)(II), C.R.S. (1992 Cum.Supp.), under the father's construction of § 14–14–104(1)(a) the Department could recover *none* of the public assistance paid. Even if no child support payments had been made pursuant to the order, the father's liability for the public assistance payments would be limited to the minimum amount ordered. The limitation on recovery would apply even if the public assistance debt were substantially in excess of the child support paid and even if the father's financial resources had improved during the time the public assistance payments were being made or had become sufficient to pay the public assistance debt at the time the Department sought repayment.

In contrast, if no "order directed to a parent" had previously been entered, or an order had been entered for "no support," under § 14–14–104(1)(b) the father would be liable for the *full* amount of public assistance paid. There would be no limitation on recovery, even if there had been no prior determination of parentage and even if the father had *no* ability to pay support, either during the time the public assistance payments were being made or at the time the Department sought repayment.

In interpreting a statute, our primary objective is to ascertain and give effect to the intent of the General Assembly. If the plain meaning of statutory language would create a contradiction in statutory provisions, we must attempt to harmonize the statutory provisions to give effect to their respective purposes. *People in Interest of G.M.,* 844 P.2d 1341 (Colo.App. 1992). It is presumed that a just and reasonable result is intended. Section 2–4–201, C.R.S. (1980 Repl.Vol. 1B).

Because of these anomalous results we are not persuaded the General Assembly intended that a parent's liability for public assistance paid should turn on whether a support order had previously been entered. To give effect to the purpose of the 1989 amendments and to avoid anomalous results, we construe the statutory scheme to remove the court's discretion to enter an order in favor of the Department and against a responsible parent for less than the amount of the public assistance paid, regardless of financial resources, prior determination of parentage, or prior entry of a support order.

In order to harmonize the language of the two statutory subsections consistent

with this construction, we conclude that § 14–14–104(1)(a) must be read to provide that the responsible parent against whom a court order has previously been directed is equally liable to the Department for the full amount of the public assistance paid, but with a credit for the amounts included in the prior order. However, the credit does not apply "to the extent of the full amount of arrearages under the order." Ability to pay remains relevant in limited circumstances, such as devising a repayment schedule.

In the example above, the parent with some financial resources and against whom an order of support for $20 per month is entered would later be liable for the full amount of public assistance paid, minus a credit for the payments made under the child support order. The total liability under the support order and for the public assistance debt would be equal to the total amount of public assistance paid. Likewise, the total liability of the parent with no financial resources and against whom no order of support has previously been ordered, or against whom an order had been entered for no support, will be equal to the total amount of public assistance paid.

In either case, the father's financial resources, including current child support obligations, is pertinent in devising a schedule for repayment of the public assistance debt. For example, if an order of minimal support has previously been entered and there has been no change in the father's financial circumstances, we see nothing in the statutory scheme that would prevent a trial court from scheduling repayment of the public assistance debt to commence after the obligation to pay child support pursuant to the order has expired.

■ Under this interpretation of the provisions, the right of the Department to collect public assistance paid is independent of the mother's right to payment of child support, and limitations on that right. *See* §§ 14–10–115 and 14–10–122(1)(a), C.R.S. (1987 Repl.Vol. 6B). The result is the same in this case whether the trial court's previous order constitutes no order of support or an order for zero support: the father is liable to the Department for the full amount of public assistance paid and repays the debt based on current financial resources. We therefore conclude the trial court did not err in holding that the Department is entitled to an order against the father in the full amount of public assistance paid.

## II.

■ The father contends that the doctrine of laches is applicable here and bars the Department from collecting the amount of public assistance paid. We disagree.

The parties have not addressed whether the doctrine of laches can be applied against the Department in seeking to recover public assistance paid pursuant to § 14–14–104. *See Colorado Springs v. Timberline Associates*, 824 P.2d 776 (Colo. 1992). Nevertheless, even if we were to assume that the doctrine is an available defense, the trial court here found that the Department over the years had made efforts to track the father, his employment, and his address. And, there is support in the record for the court's findings that there had been no unreasonable delay in bringing the action and no bad faith on the part of the Department to support the application of the doctrine of laches. Therefore, the trial court's ruling will not be disturbed on appeal. *See Martinez v. Regional Transportation District*, 832 P.2d 1060 (Colo.App.1992).

The judgment is affirmed.

RULAND and ROTHENBERG, JJ., concur.