The PEOPLE of the State of Colorado,
Plaintiff/Appellant,

v.

Sandra TURCOTTE–SCHAEFFER
and David Charles Booth, De-
fendants/Appellees.

No. 92SA239.

Supreme Court of Colorado,
En Banc.

Jan. 19, 1993.

John Suthers, Dist. Atty., Daniel H. May, Chief Deputy Dist. Atty., Larry E. Schwartz, Deputy Dist. Atty., Colorado Springs, for plaintiff/appellant.

Rector & Farry, Edward T. Farry, Jr., Colorado Springs, for Sandra Turcotte–Schaeffer.

Kevin F. Donovan, Colorado Springs, for David Charles Booth.

Chief Justice ROVIRA delivered the Opinion of the Court.

The People in this interlocutory appeal challenge the district court's suppression of evidence seized during a search of defendants' residence made pursuant to a search warrant. The People argue that the district court erred in holding that the affidavit presented in support of the search warrant was insufficient to satisfy the probable cause requirement of the United States and Colorado Constitutions. We agree, and reverse the district court's ruling suppressing the evidence.[1]

---

1. Because we hold that the warrant was supported by probable cause we express no opinion regarding the applicability of the good faith exception.

## I

On November 15, 1991, a county court judge issued a warrant, based on an affidavit of Detective James Rocco of the Woodland Park Police Department, to search the home occupied by Sandra Turcotte–Schaeffer and David Booth ("defendants"). The warrant was based on information Detective Rocco received on November 15, 1991, from Terrance Lacey, a first-time informant. At the time Lacey related the information to Detective Rocco, he was in jail on charges of cultivation, possession, and distribution of marijuana. Lacey informed Detective Rocco that he wished to provide information regarding certain individuals who were growing and selling marijuana.

Lacey told Detective Rocco that a person known to him only as "David" was growing and selling marijuana at his home in Colorado Springs. Lacey said that he had purchased marijuana from David on roughly ten separate occasions, and had done so as recently as November 8, 1991. Lacey reported that on that date he observed a marijuana growth and distribution operation, as evidenced by approximately 70 marijuana plants 2 to 2½ feet tall growing in 8 inch pots, eight large zip-lock bags containing approximately two pounds of marijuana each, and a triple-beam scale set.

Lacey was unable to provide Detective Rocco with the address of the residence, however he did provide a description of the exterior of the house and its location. He said the house was an A-framed two-story building, surrounded by a wrought iron fence with a wrought iron sculpture "of no real significance" in the yard near the sidewalk. Lacey stated that the residence was located "mid-block" on Platte Avenue one block north of Bijou, directly behind the LeBarron Hotel, and directly across from a large parking lot. Lacey also stated that there had been a yellow Volkswagen bug parked in front of the residence each time he had been to the residence. Lacey said there was no telephone service to the residence and that David used the next door neighbor's telephone to make calls.

That same afternoon, Detective Rocco, accompanied by Detective Groves, drove to the location described by Lacey. They identified the residence as 310 West Platte Avenue and confirmed that the home was an A-shaped two-story building located in the middle of the block between the LeBarron Hotel and a parking lot. They also observed the wrought iron fence, yard sculpture, and yellow Volkswagen described by Lacey.

The detectives later ran a records check on the license plate of the Volkswagen and learned that it was registered to David C. Booth. The detectives also confirmed that there was no telephone service to the residence.

Based on this information, Detective Rocco obtained a search warrant. On November 15, 1991, the warrant was executed and the search resulted in the seizure of approximately 2400 grams of marijuana, $136 in U.S. currency, marijuana seeds and dried plants, a triple-beam scale set, a .22 caliber rifle, and "other drug-related items."

The defendants were arrested and a felony complaint was filed for possession of marijuana and for possession of marijuana with intent to distribute. The defendants each filed motions to suppress alleging that the search warrant was defective and the supporting affidavit did not meet the standard of probable cause necessary to justify the issuance of the warrant.

At the conclusion of the suppression hearing, the district court found that Detective Rocco's affidavit did not evidence even a "hint that [defendants were] ... involved in unlawful activity." Consequently, the district court granted defendants' motion to suppress, holding that probable cause did not exist to support the issuance of the search warrant.

## II

■ The issue before us is whether the affidavit contained sufficient information to support a finding of probable cause to issue a search warrant as required under the Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution. Probable cause exists when an affidavit for a search

warrant alleges facts sufficient to cause a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *People v. Rayford*, 725 P.2d 1142, 1148 (Colo. 1986). The task of a reviewing court is simply to ensure that the issuing judge "had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *People v. Paquin*, 811 P.2d 394, 398 (Colo.1991).

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the two-pronged *Aguilar–Spinelli* test and adopted the totality-of-the-circumstances test as the proper analysis to determine when an affidavit contains sufficient information to support a finding of probable cause. In so doing, the Court emphasized that a judge should be guided by "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332. The Court embraced this test, in part, in recognition of the fact that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at 2329.

We adopted the totality-of-the-circumstances standard set forth in *Gates* as the applicable test for purposes of article II, section 7 of the Colorado Constitution in *People v. Pannebaker*, 714 P.2d 904, 907 (Colo.1986). Accordingly, we turn now to the question whether the judge properly concluded that the information presented in the affidavit established a fair probability that evidence of a marijuana growth and distribution operation would be found at the premises to be searched.

## III

In the present case, the information contained in the affidavit was not only detailed, but much of it was corroborated by the police prior to presentation of the affidavit. Lacey knew who lived in the home, what the home looked like, the description of one of the defendant's automobiles, and the absence of phone service to the home— all of which was corroborated by the police.

The district court, however, suppressed the evidence seized based primarily on the fact that no information was corroborated which related to criminal activity. The district court remarked that

> [t]here is nothing in this case that supports any hint that indeed these folks or this address is involved in unlawful activity. No surges of electricity, no blackened plastic over the windows, nothing. No indication of activity outside the house, that is people coming to the door as incurred a lot in crack house cases that we have heard about.

The district court erred, however, in assuming that the lack of independent police corroboration pertaining directly to illegal activity was necessarily fatal to the issuance of a valid search warrant.

In fact, the Supreme Court explicitly rejected such a view in *Gates*. There, the Supreme Court noted that the Illinois Supreme Court had held the "verification of details contained in the anonymous letter in this case amounted only to '[t]he corroboration of innocent activity,' ... and that this was insufficient to support a finding of probable cause." *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13. The Court rejected this view and in so doing, held that corroboration of only noncriminal activity may support a finding of probable cause. The Court stated:

> [I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands.... In making a determination of probable cause the relevant inquiry is

not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.

*Id.* The *Gates* court went on to note that the letters received by the police contained details that were not easily obtained facts and conditions. *Id.* at 245, 103 S.Ct. at 2335. The Court stated that "[i]f the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities." *Id.* In a similar vein, the Court recognized that "'because an informant is right about some things, he is more probably right about other facts,' *Spinelli* [*v. United States*], 393 U.S. [410] at 427 [89 S.Ct. 584, 594, 21 L.Ed.2d 637 (1969)] (White, J., concurring)—including the claim regarding the Gateses' illegal activity." *Id.*, 462 U.S. at 244, 103 S.Ct. at 2335. Finally, the Court added that probable cause was found to have been present in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), even though "*all* of the corroborating detail established in *Draper* was of entirely innocent activity...." *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13.

In the present case, it is true that the police failed to corroborate the existence of facts which, in and of themselves, raised the suspicion of illegal activity. They were, however, able to corroborate some information provided by Lacey which indicated that he had in fact been in the defendants' home. For example, the absence of phone service to the home, like the Gateses' future travel plans, is a fact not easily obtained by someone unfamiliar with the defendants. In addition, the police were able to verify much of the other information Lacey provided. This, in the words of the *Gates* court, supported a finding that Lacey "also had access to reliable information of the [defendants'] alleged illegal activity." *Id.* at 245, 103 S.Ct. at 2336. Consequently, we find that simply because the police failed to corroborate evidence relating directly to illegal conduct this fact is not, as the district court assumed, necessarily fatal to a finding of probable cause. *See Paquin*, 811 P.2d at 398 (corroboration by independent police investigation, while an important factor under the totality-of-the-circumstances test, does not rise to the level of a constitutional necessity). To elevate the requirement of independent police corroboration of illegal activity to an indispensable component to finding probable cause, as the district court did, would be in direct conflict with both the Supreme Court's holding in *Gates* as well as prior holdings of this court. *See id.* (a finding of probable cause "is not inexorably tied to any one element, nor is any single element a *sine qua non* of the probable-cause determination"). The verification of these noncriminal facts alone would not, however, be sufficient to find probable cause in this case. Rather, it is only when such verification is considered along with the indicia of reliability and self-verifying details of Lacey's information that the probable cause determination can be upheld.

■ Though *Gates* superseded the two-prong *Aguilar–Spinelli* test, the issues of an informant's reliability and basis of knowledge remain highly relevant considerations in determining the value of an informant's statement. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328; *People v. Grady*, 755 P.2d 1211, 1215 (Colo.1988). Here, both of these considerations tend to support a finding of probable cause.

Admissions against penal interest have traditionally been relied upon as a means of showing that information is reliable because they carry their own indicia of reliability. *See United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971); *People v. Rowerdink*, 756 P.2d 986, 992 (Colo.1988). In the course of providing information to Detective Rocco, Lacey clearly made statements that were against his penal interest. Lacey stated that he had previously purchased marijuana from David on eight to ten separate occasions and had done so as recently as a week prior to providing this information to the police. Such an admission could subject Lacey to criminal prosecution and thus, was against his penal interest.

An admission against penal interest does not automatically establish the reliability of the information however. Rather, the judge appraising whether an affidavit supports a finding of probable cause should consider the admission against penal interest as one element of the probable cause analysis. This is particularly true when, as in this case, the statement is made under circumstances where the informant has no apparent reason to lie.

In addition to the independent corroboration of some of Lacey's information and the indicia of reliability that those statements against Lacey's penal interest carry, Lacey's statement was also quite detailed regarding the alleged marijuana growth and distribution operation at David's residence. Together with Lacey's statement that he had been at David's residence, the self-verifying details provide a means for showing his basis of knowledge. However, the giving of a detailed story by itself does not establish reliability because an informant could simply tell an elaborate lie. *See* 1 Wayne R. LaFave, *Search and Seizure* § 3.3(e), at 671 (2d. ed. 1987) (stating that self-verifying detail should be used only with respect to basis of knowledge and not with respect to veracity). In this case, the self-verifying incriminating facts provided support for concluding that Lacey had some basis of knowledge of the alleged criminal activity.

## IV

In our view, the affidavit presented by Detective Rocco when considered in a common-sense manner and assessed under the totality-of-the-circumstances standard, satisfied the constitutional requirement of probable cause. The facts here present a very close case of probable cause and a different issuing judge may have required more information before issuing a warrant. Based on the foregoing analysis, however, we conclude that the issuing judge had a substantial basis for determining that probable cause existed. Therefore, the suppression ruling is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.