The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Marty Leon ATENCIO, Defendant–
Appellant.

No. 93CA0979.

Colorado Court of Appeals,
Div. I.

June 30, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Richard I. Gonzalez, P.C., Richard I. Gonzalez, Colorado Springs, for defendant-appellant.

Opinion by Judge ROY.

Defendant, Marty Leon Atencio, was convicted of five counts relating to the possession of or possession with intent to sell or distribute cocaine and marijuana. He was also found to have "possessed or had available for use a deadly weapon during the commission of any one or more of the above listed offenses," thereby making him subject to sentencing as a "special offender" under § 18–18–407(1)(f), C.R.S. (1993 Cum.Supp.). On appeal, the defendant attacks the constitutionality of § 18–18–407(1)(f) on due process grounds and on the basis that it violates his right to bear arms guaranteed by Colo. Const. art. II, § 13. We conclude that the statute, properly construed, is constitutional and therefore affirm defendant's sentence as a special offender.

On October 14, 1992, several police officers executed a "no-knock" search warrant for defendant's home. At that time, defendant was sitting in his living room watching television. A search of the premises revealed 300 grams of cocaine, two pounds of marijuana, drug paraphernalia, and $300 cash. In an adjoining bedroom, the officers discovered a loaded 9–millimeter semi-automatic handgun in a shoulder holster hanging from a bedpost and two unloaded rifles in the bedroom closet. Based upon the presence of these weapons and the drugs found in his residence, defendant was sentenced to twenty-four years and a day as a special offender pursuant to § 18–18–407(1)(f).

## I.

At the outset, the People contend that defendant failed to preserve for appellate review the issue of the constitutionality of the statute. We reject such contention.

The issue was initially argued in defendant's motion for acquittal at the close of the People's case. The People urge that defendant should be required to raise such issues by pretrial motion as defendant's vague reference to a constitutional right to bear arms in self-defense in his oral motion for judgment of acquittal failed to give the People adequate notice under C.R.C.P. 57(j).

While we agree that challenging the constitutionality of a statute in the midst of trial can place the People at a disadvantage in responding, we conclude that the issue was raised and ruled upon in the trial court in a manner sufficient to preserve it for our review. See Crim.P. 12(b)(2) (a motion challenging the constitutionality of a statute may be made after the commencement of a trial); *Committee for Better Health Care for All*

*Colorado Citizens v. Meyer*, 830 P.2d 884 (Colo.1992) (issues that have been properly presented and determined by another court may be considered on review).

The People also contend that defendant does not have standing to attack the constitutionality of the statute. For the reasons stated in *People v. Janousek*, 871 P.2d 1189 (Colo.1994) and *People v. Batchelor*, 800 P.2d 599 (Colo.1990), we will not address that issue separately.

## II.

Defendant contends that the statute is constitutionally overbroad. We are not persuaded.

### A.

Section 18–18–407(1), C.R.S. (1993 Cum. Supp.) provides as follows:

Upon a felony conviction under this part 4, the presence of any one or more of the following extraordinary aggravating circumstances designating the defendant a special offender shall require the court to sentence the defendant to a term greater than the presumptive range for a class 2 felony but not more than twice the maximum term for a class 2 felony authorized in the presumptive range for the punishment of such felony:

. . . .

(f) The 'defendant used, displayed, possessed, or had available for use a deadly weapon as defined in section 18–1–901(3)(e). . . .

■ A governmental purpose to control or prevent certain activities, which may be constitutionally subject to state or municipal regulation under the police power, may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. Even though the governmental purpose may be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. *See City of Lakewood v. Pillow*, 180 Colo. 20, 501 P.2d 744 (1972).

Section 18–18–407(1)(f) is a sentence enhancement statute, and the constitutionality of the general statutory scheme of the sentence enhancement statutes has been upheld by our supreme court. *People v. Garcia*, 752 P.2d 570 (Colo.1988) (*Garcia I*); *People v. Lacey*, 723 P.2d 111 (Colo.1986). Indeed, in *Garcia I*, the court rejected the arguments that the section now codified as § 18–18–407(1)(d), C.R.S. (1993 Cum.Supp.), a companion subsection which provides for an enhanced sentence if the defendant unlawfully introduced, distributed, or imported a controlled substance into Colorado, was unconstitutionally vague, overbroad, and violated the defendant's right to equal protection.

Here, defendant argues that § 18–18–407(1)(f) criminalizes his right to keep and bear arms in defense of his home, person, and property in violation of Colo. Const. art. II, § 13. He relies on *City of Lakewood v. Pillow, supra*, in which our supreme court concluded that a municipal ordinance was unconstitutionally overbroad which would prohibit gunsmiths, pawn brokers, and sporting goods stores from carrying on a substantial part of their business. The court held the prohibition of such acts could not be reasonably classified as unlawful under the state police powers. That is not the situation here.

■ Our supreme court, without deciding whether a fundamental right is involved, has held that the right to bear arms in self-defense can be restricted by a legitimate exercise of the state's police power. *Robertson v. City & County of Denver*, 874 P.2d 325 (Colo.1994). The state may properly exercise its police power by enacting laws that protect the health, safety, and welfare of its citizens. *Robertson v. City & County of Denver, supra; People v. Pharr*, 696 P.2d 235 (Colo.1984); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975).

■ The state has a compelling interest in preventing crime. *People v. Gross*, 830 P.2d 933 (Colo.1992). A statute that is "intended to prevent crime, serves a legitimate governmental interest sufficiently strong to justify its enactment." *Robertson v. City & County of Denver, supra*, at 332.

■ Because of the increased risk of injury or death to private citizens and law enforcement personnel that may result from the combination of drugs and weapons, the state, pursuant to its police powers, may reasonably regulate and sanction such activities. *Robertson v. City & County of Denver*, supra; *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979) (*Garcia II*).

Specifically, in *Robertson*, our supreme court held that an ordinance that banned the possession, sale, or manufacture of assault weapons constituted a reasonable exercise of the state's police power in part because such weapons were favored by "drug traffickers" and posed a substantial threat to the health and safety of law enforcement officials and the public. In *Garcia II*, our supreme court held that the state had a legitimate interest in preventing persons under the influence of alcohol or drugs from possessing a firearm. In both cases, the court found that the law did not impermissibly infringe on a person's right to bear arms in self-defense pursuant to Colo. Const. art. II, § 13.

■ Therefore, we conclude that § 18–18–407(1)(f) is reasonably related to a legitimate governmental interest and constitutes a valid exercise of the state's police power and does not violate the right to bear arms in self-defense as protected by the Colorado Constitution.

#### B.

Defendant asserts that the statute is overbroad and violates a person's right to bear arms in self-defense because it fails to require a nexus, or an adequate nexus, between the offense and the use, display, possession or availability for use of a deadly weapon. We agree that there must be a nexus between the deadly weapon and the offense but disagree with defendant's assertion that the statute has no such requirement or that there is insufficient evidence to establish a sufficient nexus.

■ We note at the outset that the statutory language, "use, display, possession, or availability for use" are nexus terms. Thus, by the express language of the statute itself, the People are required to show some nexus between the deadly weapon and the drug offense upon which the enhanced sentence is based.

The federal courts, in construing and applying 18 U.S.C. § 924(c)(1) (Supp.1992) which provides for a five-year prison sentence for any defendant who uses or carries a firearm "during and in relation to any ... drug trafficking crime" have held that a sufficient nexus has been established when the guns were found in an upstairs bedroom even though the contraband was located in the downstairs kitchen and living room, *United States v. Boykin*, 986 F.2d 270 (8th Cir.1993) *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993), and when an operable firearm found in close proximity to a room or rooms in which there was drug distribution, processing, or storage created a sufficient nexus to support finding that it was "used" during or in relation to a drug trafficking crime. *United States v. Hadfield*, 918 F.2d 987 (1st Cir.1990) *cert. denied*, 500 U.S. 936, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991).

■ In light of this authority, we conclude that evidence showing defendant had a loaded 9–millimeter handgun in a bedroom in close proximity to the drugs and to where he was arrested was sufficient for the jury reasonably to infer that he had a deadly weapon "available for use." *See Garcia II, supra; People v. Rivera*, 765 P.2d 624 (Colo.App. 1988), *rev'd on other grounds*, 792 P.2d 786 (Colo.1990) (firearm was within "arm's reach"); *United States v. Hadfield, supra*, (operable firearm in close proximity).

#### C.

■ Defendant further asserts that the definition of "deadly weapon" is vague and overbroad. Again, we disagree.

Here, the enhanced sentence was based on the firearms found in defendant's residence. "Firearms, knives and bludgeons are per se capable of producing death or serious bodily injury in the manner they are used or are intended to be used." *People v. Loomis*, 857 P.2d 478, 482 (Colo.App.1992); *see also* §§ 18–1–901(3)(e), (3)(h), C.R.S. (1986 Repl. Vol. 8B). Accordingly, it was not necessary

for the prosecution to show that the defendant intended to use it as a deadly weapon.

Therefore, under the circumstances present here, § 18–18–407(1)(f) is not unconstitutionally vague or overbroad with respect to the term "deadly weapon."

### III.

■ Defendant next contends that § 18–18–407(1)(f) is unconstitutionally vague because of· its use of the phrase, "used, displayed, possessed, or had available for use a deadly weapon." We conclude that the statute is sufficiently specific with respect to this phrase to avoid constitutional infirmity.

The guiding consideration in a void-for-vagueness challenge is whether the statute "forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and ·differ as to its application." *People v. Becker*, 759 P.2d 26, 31 (Colo.1988). This requirement serves dual purposes: (1) It assures that a statute provides adequate notice of the prohibited conduct and (2) it provides adequate standards to prevent arbitrary and discriminatory application. *People v. Gross, supra*, at 937.

■ An additional consideration is that we are required to construe a statute in a constitutional manner if a reasonable and practical construction can be applied to it. *People v. Moyer*, 670 P.2d 785 (Colo.1983).

The General Assembly did not define the terms "used," "displayed," "possessed," or "available for use," as used in this context. Thus, we look for ordinary and commonplace definitions. *See Garcia I, supra.*

*Webster's Third New International Dictionary* 2523 (1986) defines "use" as "to put into action or service." "Display" is defined as: "give evidence of: show, manifest, disclose." *Webster's, supra*, at 654. "Possess" is defined as: "to have and hold as property." *Webster's, supra*, at 1770. "Available" is defined as: "that is accessible or may be obtained." *Webster's, supra*, at 150.

Moreover, with regard to other statutes that punish the use or possession of a weapon in connection with a crime, our appellate courts have taken a commonsense approach when defining what constitutes "use" or "possession" of a weapon. *See People v. Hines*, 780 P.2d 556 (Colo.1989); *People v. Adams*, 867 P.2d 54 (Colo.App.1993); *People v. Rivera, supra.*

For example, in *Garcia II, supra*, our supreme court concluded that "possession" of a firearm means the actual or physical control of the firearm and is a question of fact for the jury which may consider: (1) proximity of the defendant to the weapon; (2) the ordinary place of storage of the weapon; (3) the defendant's awareness of the presence of the weapon; and (4) impediments which prevent ready access to the weapon.

Also, in *People v. Loomis, supra*, a panel of this court held that a person is "armed" if a firearm is easily accessible and readily available for use in either an offensive or defensive manner.·

We conclude that the ordinary and commonplace definitions of the terms "used," "displayed," "possessed," or "available for use" provide fair notice and are in accord with previous decisions of this court and our supreme court.

Therefore, if a defendant is convicted of certain controlled substance offenses and it is also determined that the defendant either used, possessed, displayed, or had available for use a deadly weapon, the defendant is properly subject to an enhanced sentence pursuant to § 18–18–407(1)(f).

The sentence is affirmed.

METZGER and RULAND, JJ., concur.