The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Michael I. ATENCIO, Defendant–
Appellant.

No. 03CA2147.

Colorado Court of Appeals,
Div. A.

Oct. 20, 2005.

Certiorari Denied June 5, 2006.*

* Justice EID does not participate.

Justice BENDER would grant as to the following issue:

Whether the evidence at trial was insufficient to prove beyond a reasonable doubt that Mr. Atencio knowingly possessed the methamphetamine and cocaine baggies found on the private property of Brian O'Neil?

NEY **, J.

Defendant, Michael I. Atencio, appeals the judgment of conviction entered upon jury verdicts finding him guilty of unlawful possession of more than twenty-five grams of a

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

schedule II controlled substance with intent to distribute, resisting arrest, and tampering with physical evidence. We affirm.

## I.

■ Defendant first argues that the evidence is insufficient to support the jury's finding that he possessed a schedule II controlled substance. We disagree.

The controlled substances statute provides, in relevant part, as follows:

(1)(a) ... [I]t is unlawful for any person knowingly to ... possess, or to possess with intent to ... distribute a controlled substance....

(2) ... [A]ny person who violates any of the provisions of subsection (1) of this section:

(a) In the case of a controlled substance listed in schedule I or II of part 2 of this article, commits:

(I) A class 3 felony....

(3)(a) ... [A]ny person convicted pursuant to paragraph (a) of subsection (2) of this section for knowingly ... possessing, or possessing with intent to ... distribute ... an amount that is or has been represented to be:

(I) At least twenty-five grams or one ounce but less than four hundred fifty grams of any material, compound, mixture, or preparation that contains a schedule I or schedule II controlled substance ... shall be sentenced to the department of corrections for at least the minimum term of incarceration in the presumptive range provided for such offense in section 18–1–105(1)(a)....

Section 18–18–405, C.R.S.2005.

■ Because the sentencing provision relating to the amount of the controlled substance increases the punishment for the offense, this provision must be proved beyond a reasonable doubt in the same manner as an element of the offense. *See People v. Hinojos–Mendoza*, 140 P.3d 30, 2005 WL 2561391

§ 24–51–1105, C.R.S.2005.

(Colo.App. No. 03CA0645, July 28, 2005); *People v. Whitley*, 998 P.2d 31, 33 (Colo.App. 1999).

■ In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

Here, the evidence, under the foregoing standards, establishes the following facts. Police officers responding to the report of a domestic disturbance contacted defendant and learned that he was wanted in connection with an active arrest warrant. As the officers tried to take defendant into custody, defendant broke free and ran.

One of the officers chased after defendant on foot. As the officer closed in on defendant, defendant ran toward a private residence and tried to scale a fence. He did not succeed, though he did manage to drape his arms over the top of the fence. The officer ordered defendant to disentangle himself from the fence and return to the ground. Defendant complied.

As the officer was waiting for other officers to arrive at the scene, the owner of the residence emerged from his house and called the officer's attention to four baggies that were on the ground in the yard approximately five to six feet from the fence. The baggies contained a white powdery substance. When the officer retrieved the baggies, he noticed that they were warmer than the night air.

The owner of the residence testified that the baggies containing the white powdery substance were not on the ground when he was in the yard approximately thirty to forty-five minutes before defendant attempted to climb the fence. The owner further testified that he was "100%" certain he would have noticed the baggies when he was in the yard earlier because the area where they were later discovered was "easily visible."

Subsequent forensic testing revealed that the baggies contained methamphetamine and cocaine with a combined weight of approximately 109 grams (just under four ounces).

On appeal, defendant argues that the evidence of possession was insufficient because the People did not prove anything other than "non-exclusive access and proximity to the area where the drugs were found." We disagree.

■ A conviction for unlawful possession of a controlled substance may be predicated on circumstantial evidence. The controlled substance need not be found on the person of the defendant, as long as it is found in a place under his or her dominion and control. However, where a person is not in exclusive possession of the premises in which drugs are found, such an inference may not be drawn unless there are statements or other circumstances tending to buttress the inference of possession. *See People v. Stark*, 691 P.2d 334, 339 (Colo.1984).

In this case, there were four pieces of circumstantial evidence to buttress the inference that defendant knowingly possessed the controlled substances: defendant fled from the officers; the baggies of methamphetamine and cocaine were found in the place where defendant's flight was interrupted; the baggies were warmer than the night air; and the baggies had not been in that location shortly before defendant was apprehended there.

Contrary to defendant's suggestion, the aggregation of the foregoing items of evidence does not constitute the stacking of inferences that has been disapproved of in cases such as *People v. Ayala*, 770 P.2d 1265, 1268 (Colo.1989). Accordingly, we conclude that, in combination, this evidence supports the jury's finding that defendant knowingly possessed the controlled substances.

## II.

■ Defendant next argues that the trial court committed reversible error by allowing a police officer to testify, as an expert witness, that the amount of drugs in defendant's

possession was consistent with distribution, rather than with mere personal use. Again, we disagree.

■ Trial courts are vested with broad discretion in matters of admissibility of expert testimony, and that determination will not be overturned absent an abuse of discretion. *Masters v. People*, 58 P.3d 979 (Colo. 2002).

Here, the People called a police sergeant with two years of experience as a narcotics investigator for a regional drug task force who had also attended numerous specialized training programs concerning the use and distribution of narcotics. Over defendant's objection, the court qualified the sergeant as an expert witness concerning the "use and distribution of controlled substances."

The officer then proceeded to testify, based on his experience and training, that a typical user of methamphetamine or cocaine consumes up to three grams per day, that most transactions involve the purchase of a single gram, and that the street value of an ounce of cocaine or methamphetamine ranges from $800 to $1200. The officer opined that four ounces of a controlled substance was an amount consistent with distribution, rather than with personal use.

We reject defendant's claim that the sergeant's testimony constituted an expression of opinion that invaded the jury's province as the body charged with determining whether defendant had the intent to distribute. Although the sergeant did testify that the amount of drugs seized was consistent with an intent to distribute, he never said that defendant actually possessed that intent. Indeed, nothing in the sergeant's testimony would have been inconsistent with a jury finding that defendant was an especially heavy user who was stockpiling a large quantity of controlled substances for future personal use. Accordingly, we perceive no abuse of discretion in the trial court's ruling. *See Davis v. State*, 200 Ga.App. 44, 406 S.E.2d 555 (1991)(because knowledge of the amount of crack cocaine one would generally possess for personal use, or the amount which might evidence distribution, is not necessarily within the scope of the ordinary layman's knowledge and experience, expert opinion testimony is admissible on this issue; the testimony of a police officer qualified as an expert on the subject of the street sale of drugs was not an expression of opinion as to the ultimate issue because the officer's testimony was general and did not reach the question of whether the drugs in the case at issue were for purposes of distribution).

## III.

■ Defendant next contends the evidence is insufficient to support the jury's finding that he intended to distribute the cocaine and methamphetamine. We are not persuaded.

Applying the relevant standard of review to the disputed element of the offense (both of which are set forth above), we conclude that the large amount of controlled substances and the fact that they were separately packaged constituted sufficient proof of defendant's intent to distribute.

## IV.

■ Finally, defendant argues that the evidence is insufficient to support the jury's verdict finding him guilty of tampering with physical evidence. We disagree.

As relevant here:

(1) A person commits tampering with physical evidence if, believing that an official proceeding is ... or about to be instituted and acting without legal right or authority, he:

(a) ... removes ... physical evidence with intent to impair its ... availability in the ... prospective official proceeding;

...

(2) "Physical evidence", as used in this section, includes any article, object, document, record, or other thing of physical substance.

Section 18–8–610, C.R.S.2005.

The statute does not define the term "removes." Defendant urges us to interpret the term to limit it to situations where a person removes evidence from a "crime scene." In a closely related claim, defendant argues that

the term "physical evidence"—which in this case was defined for the jury in accordance with § 18–8–610(2)—should be narrowly interpreted to apply only in situations where the items in question have been "discovered by the authorities." We reject both contentions.

In construing a statute, it is our primary purpose to ascertain and give effect to the intent of the legislature. Toward that end, we look first to the language of the statute itself and give words and phrases their plain and ordinary meaning. *Robbins v. People*, 107 P.3d 384, 387 (Colo.2005).

Here, it is evident from the language of the tampering statute that the General Assembly intended to criminalize behavior that interferes with an official proceeding even if that behavior occurs before the proceeding is instituted. Were this not the case, the General Assembly would not have included the provision making the statute applicable to proceedings that are "about to be instituted." This much is not in controversy. What is in dispute is whether, under the terms of the tampering statute, it is the defendant or the law enforcement authorities who must be aware than an official proceeding is about to be instituted.

Under defendant's suggested interpretations of the terms "removes" and "physical evidence," a person could not be convicted of tampering with physical evidence for removing an item if, at the time of the removal, the evidentiary value of the item was unknown to law enforcement authorities because they did not yet know that they were "about" to institute an official proceeding. We reject this constrained construction because it would thwart the intent of the General Assembly.

By its terms, the tampering statute focuses on the knowledge of the person who is removing the evidence. In this case, defendant knew with absolute certainty that an official proceeding was "about to be instituted" because the officers had begun to take him into custody, he had approximately four ounces of controlled substances on his person, and it was inevitable that this evidence would be discovered during the search of his person incident to the arrest. Indeed, defendant does not posit any scenario in which the officers in this case would not have discovered the controlled substances if they had been able to complete the arrest. Likewise, because defendant's possession of the controlled substances was unlawful, it was likely that he would be charged with unlawful possession—the first step in the initiation of official proceedings. Whether (or when) the officers knew this is irrelevant. What matters is that defendant knew all of this at the time he ran from the officers and removed the baggies of methamphetamine and cocaine by tossing them over the fence. Accordingly, we conclude the evidence is sufficient to sustain defendant's conviction for tampering with physical evidence.

In reaching this conclusion, we address defendant's various policy arguments by emphasizing that our ruling is limited to the facts before us. This case does not require us to resolve the application of the tampering statute to situations in which a person possessing controlled substances makes the controlled substances unavailable to law enforcement at a point in time when he or she does not know with certainty of an imminent arrest that will result in discovery of the controlled substances. Moreover, because this case involves unlawful controlled substances, we need not decide whether the tampering statute applies to cases where there is no pending or imminent "official proceeding" and the removed item in question is not contraband with obvious relevance as evidence in the legal proceeding that will inevitably be instituted upon its discovery.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge STERNBERG ** concur.