**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Bo Richard WARNER, Defendant–Appellant.**

No. 06CA2252.

Colorado Court of Appeals, Div. VI.

Aug. 19, 2010.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Elizabeth Hunt White, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

Defendant, Bo Richard Warner, appeals his multiple convictions for possession of controlled substances, drug paraphernalia, and firearms. He also appeals his conviction and enhanced sentence as a special offender. We affirm.

## I. Background

Police searched a residence identified as defendant's home pursuant to a warrant and found various items of contraband. Defendant asserted at trial that he no longer lived at the residence on the date it was searched, had begun moving out approximately six weeks earlier, and had not slept there since being shot in a murder attempt two weeks earlier. He argued that the items seized belonged to an alternate suspect he alleged was the sole tenant of the residence at the time of the search.

## II. Analysis

### A. Suppression of Evidence

Defendant contends that the trial court improperly denied his motion to suppress evidence seized pursuant to a search warrant based on allegedly false statements by a first-time informant. We disagree.

In the context of a suppression motion, we defer to a trial court's findings of fact, but analyze de novo its application of legal standards to those facts as a question of law. *People v. Kazmierski*, 25 P.3d 1207, 1210 (Colo.2001).

### 1. Veracity Hearing

Defendant contends that the trial court erred by refusing to consider, as substantive evidence at his veracity hearing, an affidavit by an investigator who interviewed the informant whose alleged statements were used to obtain a warrant to search his residence. We disagree.

A defendant challenging the veracity of a search warrant affidavit is entitled to a hearing only if he or she (1) establishes a good faith basis in fact for the challenge and (2) describes with specificity the precise statements being challenged. *People v. Dailey*, 639 P.2d 1068, 1074–75 (Colo.1982); *People v. Flores*, 766 P.2d 114, 119 (Colo.1988). Thus, the defendant's suppression motion must be supported by one or more affidavits to meet these threshold requirements. *Dailey*, 639 P.2d at 1075.

At a veracity hearing, the court must first determine whether there are erroneous statements in the affidavit. If so, it must decide whether the source of the error is intentional falsehood or reckless disregard for the truth on the part of the affiant. If the court finds that the defendant has shown by a preponderance of the evidence that the source of the error is intentional falsehood or reckless disregard for the truth, then the false statements must be stricken from the affidavit. *Flores*, 766 P.2d at 119. False statements resulting from any other source need not be stricken if the trial court determines that other sanctions, or no sanctions, are appropriate. *Id.*

Here, the police officer who searched defendant's residence obtained a search warrant based on statements attributed to a first-time, named informant. In support of his suppression motion, defendant submitted an affidavit (suppression affidavit) of a defense investigator who interviewed the infor-

mant one year after the search and who stated that the informant denied making most of the statements attributed to him in the search warrant affidavit.

The trial court found that the suppression affidavit was sufficient to support defendant's request for a veracity hearing, but refused to consider the affidavit as substantive evidence at the veracity hearing because it constituted inadmissible hearsay. Defendant offered no other evidence in support of his claim that the search warrant affidavit was based on false information, and the trial court based its decision on the only substantive evidence before it: the testimony of the police officer who had obtained the warrant. Accordingly, the trial court denied defendant's suppression motion.

Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. CRE 801(c). Hearsay is not admissible as evidence in criminal proceedings except as specifically provided by rule or statute. CRE 802; *see also* CRE 1101.

Here, defendant relied on the suppression affidavit without attempting to call the informant, whose purported statements were extensively quoted and paraphrased in the affidavit. The affidavit itself constituted pure hearsay, and the statements allegedly made to the investigator by the informant amounted to unsworn hearsay within hearsay. Moreover, no exclusion or exception to the hearsay rule applied to this evidence, nor does any statute or other rule of criminal procedure allow the use of an affidavit as substantive evidence in a veracity hearing.

■ It is one thing for a trial court to accept an affidavit to establish the existence of a dispute regarding the truth of the allegations in the search warrant affidavit. It is quite another to accept the same affidavit for the purpose of resolving that dispute. *See, e.g., Doug Sears Consulting, Inc. v. ATS Services, Inc.,* 752 So.2d 668, 670 (Fla.Dist. Ct.App.2000) (affidavit not generally admissible at evidentiary hearing because it is not subject to cross-examination). Even in circumstances where affidavits are otherwise admissible, an affidavit not based on the affi-

ant's personal knowledge will not suffice. *See* CRE 602; *State v. Pearson,* 145 N.C.App. 506, 551 S.E.2d 471, 475 (2001).

Here, many of the questions and responses from the interview reported in the suppression affidavit were confusing. For example, one of the paragraphs of the suppression affidavit stated:

> I stated to [the informant] that the Search Warrant Affidavit stated he said that "during the time of his second stint on work release, April 20, 2005 through June 1, 2005 he would purchase methamphetamine from [defendant] about twice a week; and that he would usually purchase about one gram of methamphetamine at a time and that he would charge him $50.00 dollars." I asked [the informant] if that was true. [The informant] answered, "No."

It is impossible to determine from this response whether the informant intended to assert that the entire quotation was false or whether he merely purchased methamphetamine only once week, in different amounts than one gram, for a different price, or during a different time period.

The prosecution called the officer who wrote the search warrant affidavit; he affirmed the statements contained in that affidavit and was available for full cross-examination by the defense. The trial court thus had the opportunity to assess the officer's credibility.

No one testified for defendant at the veracity hearing. The prosecution had no opportunity to cross-examine the informant or to obtain clarification of his responses to leading and compound questions, and the trial court could not assess his demeanor. Moreover, the investigator lacked personal knowledge of the substantive statements contained in the suppression affidavit; he merely reported the informant's unsworn responses to his questions. Thus, even if the trial court had considered the suppression affidavit at the veracity hearing, the affidavit would not have sustained defendant's burden.

We therefore conclude that the trial court did not err by determining that defendant failed to establish by a preponderance of the

evidence that the search warrant affidavit contained false statements.

Accordingly, we next proceed to assess whether the unexcised search warrant affidavit supported a showing of probable cause.

### 2. Probable Cause

Defendant contends that the search warrant lacked probable cause because it was based on largely uncorroborated statements by a first-time informant. We disagree.

■ An affidavit supporting a request for a search warrant establishes probable cause if it contains sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *People v. Kerst*, 181 P.3d 1167, 1172 (Colo.2008). A reviewing court can consider only the information contained within the four corners of the affidavit in assessing whether an affidavit establishes probable cause. *People v. Randolph*, 4 P.3d 477, 481 (Colo.2000).

■ The court must consider the totality of the circumstances in assessing probable cause. *People v. Miller*, 75 P.3d 1108, 1113 (Colo.2003). "A probable cause determination 'does not lend itself to mathematical certainties and should not be laden with hypertechnical interpretations or rigid legal rules.'" *Kazmierski*, 25 P.3d at 1211 (quoting *People v. Altman*, 960 P.2d 1164, 1167 (Colo. 1998)). Instead, probable cause necessary to obtain a search warrant is measured by reasonableness. *People v. Campbell*, 678 P.2d 1035, 1040 (Colo.App.1983).

■ We must uphold the validity of a warrant if the search warrant affidavit creates a substantial basis for concluding that probable cause exists. *Miller*, 75 P.3d at 1112. Any doubts must be resolved in favor of the issuing judge's determination. *People v. Eirish*, 165 P.3d 848, 852 (Colo.App.2007).

■ Here, the search warrant affidavit alleged that a named informant provided information including the following:

- he had known defendant for a year and a half;
- he and defendant had been "business partners" in the distribution of drugs;

- he had been to defendant's house about ninety times and had seen drugs there each time;
- defendant kept drugs in a safe in his laundry room;
- defendant had sold him drugs about sixty times, including approximately twelve times in the past six weeks;
- he had purchased drugs from defendant about fourteen hours prior to speaking with police;
- defendant carried a gun, specifically a Ruger 9mm, and he had seen defendant holding the gun during the most recent drug purchase; and
- defendant had recently been injured in a drug-related shooting and the informant had seen the wounds.

The search warrant affidavit also stated that, after interviewing the informant, police took him to an address he indicated was defendant's home and he went inside. When the informant returned, he reported that defendant had agreed to sell him a large quantity of methamphetamine the following night. The informant also stated that he had seen drugs and a Ruger 9mm in plain view.

The affidavit further recited that police corroborated that defendant had recently been shot and that he lived at the address indicated by the informant. Police also determined that defendant had a prior drug conviction.

Defendant argues that the informant was presumptively unreliable because he was a first-time informant with an incentive to falsely implicate defendant in order to escape punishment for his own criminal conduct. Accordingly, he contends that additional corroboration was required before the informant's statements could support a finding of probable cause. We are not persuaded.

■ "[C]orroboration of only noncriminal activity may support a finding of probable cause." *People v. Turcotte–Schaeffer*, 843 P.2d 658, 660 (Colo.1993). In *Turcotte–Schaeffer*, a search warrant was issued based on statements by a first-time, named informant who was then serving time on drug charges. *Id.* at 659. Police corroborated only

innocent activity, including the informant's description of the home to be searched and its occupants, his description of one of the defendant's automobiles, and the absence of phone service at the home. *Id.* at 660. The supreme court held that the informant's knowledge of these facts indicated a level of familiarity with the defendant sufficient to support a finding that he also had access to reliable information about the defendant's alleged illegal activity. *Id.* at 661. In assessing the totality of the circumstances, the supreme court also gave weight to the fact that the informant's statements to police were made against penal interest. *Id.* at 662.

Here, police verified that defendant lived at the address indicated by the informant and that he had been shot as the informant described. Moreover, they observed him enter defendant's residence, waited while he spent nearly twenty minutes inside, and then obtained additional detailed information about what he saw there. In contrast, the police officers in *Turcotte–Schaeffer* never corroborated that the informant had been inside the place to be searched.

The informant here also made numerous statements against penal interest in the course of providing information to police, including his admissions that he had purchased drugs from defendant sixty times and that they had been in the business of distributing drugs together.

Considering the totality of the circumstances, we conclude that the search warrant affidavit created a substantial basis for concluding that probable cause existed to search defendant's residence.

## B. Videotape

■ Defendant contends that the trial court erred by admitting a videotape seized during the search that showed him apparently smoking drugs at the residence one week before the search. We disagree.

The standard of review applicable to evidentiary rulings of the trial court is abuse of discretion. *People v. Rath,* 44 P.3d 1033, 1043 (Colo.2002). A trial court abuses its discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

Defendant mistakenly frames the issue of admission of the videotape as one of improper character evidence under CRE 404(b). That rule precludes evidence of other acts to show an accused's propensity to commit crime. CRE 404(b) applies when the prosecution seeks to introduce other acts evidence because it is relevant to a material fact in issue.

Here, conversely, the prosecution did not seek to introduce evidence of defendant smoking drugs per se. Rather, the videotape was used to rebut defendant's claim that he was not in possession of the residence at the time it was searched. That defendant was smoking anything in the residence was irrelevant to that issue, and the prosecutor did not seek to introduce that act in and of itself.

■ Nevertheless, defendant's arguments to the trial court and on appeal have preserved the issue for review under CRE 403, which requires the exclusion of relevant evidence if its probative value is substantially outweighed by its prejudicial effect. However, CRE 403 strongly favors the admission of evidence, and only prejudice that suggests a decision made on an improper basis, such as bias, sympathy, anger, or shock, requires exclusion of relevant evidence. *People v. Greenlee,* 200 P.3d 363, 367 (Colo.2009).

■ Our assessment of the trial court's ruling must consider the videotape as a whole and in the context of other evidence offered at trial. *See Rath,* 44 P.3d at 1041 (citing *Old Chief v. United States,* 519 U.S. 172, 184–85, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

The videotape first depicted defendant, alone in the residence, starting the camera and aligning it to show the living room. Later, he twice opened the front door to allow first the informant and then another man to enter. The videotape showed defendant and the informant seated in the living room smoking from a glass pipe. D.P., identified by defendant as an alternate suspect and sole tenant of the residence at the time of the search just one week later, arrived and was let in by the other male guest. She sat only

when defendant invited her to do so by gesture. Defendant was seen directing the others around the residence and pointing out where things were located.

Defendant contends that the prejudicial effect on the jury of seeing him apparently smoking drugs substantially outweighed any probative value of the videotape evidence because the jury was likely influenced to convict him on the current charges based on its impression that he had used illicit drugs in the recent past. We are not persuaded.

Assuming the maximum probative value that a reasonable jury might give the evidence and the minimum unfairness reasonably expected from the evidence, *see People v. Torres,* 224 P.3d 268, 274–75 (Colo.App. 2009) (citing *People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995)), we cannot conclude here that defendant's apparent drug use on the videotape made its admission unduly prejudicial. Defendant asserted at trial that he no longer lived at the residence on the date it was searched, just one week after he made the videotape. His actions, as well as those of the alternate suspect, tended to discredit his defense; thus, the evidence was highly probative. The danger of unfair prejudice was low in light of the extensive evidence of defendant's past drug use, recent and otherwise, that was admitted without objection through the testimony of several witnesses. Indeed, before the trial court admitted the videotape, the informant testified to multiple instances of similar conduct depicted therein, and defendant did not object to that testimony.

To the extent defendant contends that the trial court was required to exclude the videotape as cumulative of other evidence that he "continued to spend some time" at the residence after being shot, we disagree. Admission of cumulative evidence is a matter within the sound discretion of the trial court. *People v. Salas,* 902 P.2d 398, 401 (Colo.App. 1994) (citing *Maes v. People,* 169 Colo. 200, 208, 454 P.2d 792, 796 (1969) (admission of relevant evidence is not error merely because it is cumulative)). Moreover, the videotape shows not only defendant's conduct in the residence, but also that of the alternate sus-

pect. Thus, the evidence was not purely cumulative.

We therefore discern no abuse of discretion by the trial court in admitting the videotape.

## C. Sufficiency of Evidence

Defendant contends that the evidence presented at trial was insufficient to support the jury verdicts against him. We disagree.

When reviewing a claim of insufficient evidence, we must uphold a conviction if the verdict is supported by substantial evidence, viewed in the light most favorable to the prosecution. *Mata–Medina v. People,* 71 P.3d 973, 983 (Colo.2003). Evidence is sufficient when "any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. McIntier,* 134 P.3d 467, 471 (Colo.App.2005) (citing *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999); *see also Kogan v. People,* 756 P.2d 945, 950 (Colo.1988)).

### 1. Drug Possession

Defendant argues that the evidence was insufficient to prove that he "knowingly possessed" controlled substances under section 18–18–405, C.R.S.2009, because (1) he was not present at the time the drugs were seized, (2) he was not in exclusive control of the residence, and (3) D.P. testified that she kept drugs in the same places where police found the drugs in question. We are not persuaded.

A conviction for possession of a controlled substance may be predicated on circumstantial evidence. *People v. Stark,* 691 P.2d 334, 339 (Colo.1984); *People v. Atencio,* 140 P.3d 73, 75 (Colo.App.2005).

The controlled substance need not be found on the person of the defendant, as long as it is found in a place under his or her dominion and control. However, where a person is not in exclusive possession of the premises in which drugs are found, such an inference may not be drawn unless there are statements or other cir-

cumstances tending to buttress the inference of possession.

*Atencio*, 140 P.3d at 75 (citing *Stark*, 691 P.2d at 339).

Here, evidence supporting an inference that defendant knowingly possessed the drugs found at the residence included:

- the videotape evidence discussed above;
- police testimony that the informant reported that, the day before the search, he purchased methamphetamine from defendant at the residence, he saw illegal drugs and a handgun there, and defendant agreed to sell him a large quantity of methamphetamine the following night;
- police testimony that D.P. reported that defendant suggested she take responsibility for the drugs found at the residence because he "already had a felony," and that he had threatened to manufacture evidence to implicate her if she did not;
- defendant's testimony that his belongings were in the residence when it was searched;
- defendant's testimony that, although he did not consider the residence his "home" after he was shot, he continued to go there during the day;
- D.P.'s testimony that she was not allowed in the house without defendant's permission;
- D.P.'s testimony that the drugs seized from the residence were not hers and that she did not have drugs there on the day of the search;
- D.P.'s testimony that she stayed at the residence only about nine nights during a three-week period ending before defendant was shot (which was two weeks before the search); and
- the informant's testimony that defendant, although he was moving out, still lived at the residence at the time it was searched.

The police testimony regarding statements by D.P. and the informant, to which defendant made no hearsay objection, was admissible because it contradicted the witnesses' inconsistent statements at trial. *See* CRE 801(d)(1)(A); § 16–10–201, C.R.S.2009.

D.P.'s testimony that she hid drugs in the residence without defendant's knowledge and other evidence supporting defendant's case do not render the prosecution's evidence insufficient. Issues of witness credibility and the weight to be given conflicting evidence are the sole province of the jury. *Clark v. People*, 232 P.3d 1287, 1293 (Colo.2010).

Accordingly, we conclude that the evidence supports the jury's finding that defendant knowingly possessed the controlled substances.

### 2. Weapon Possession

■ Defendant also challenges the sufficiency of the evidence supporting his convictions for possession of a weapon by a previous offender under section 18–12–108, C.R.S. 2009. We perceive no error.

Section 18–12–108 prohibits one previously convicted of a felony from knowingly possessing a firearm. Defendant's prior convictions are not in dispute.

Defendant relies on *People v. Garcia*, 197 Colo. 550, 554, 595 P.2d 228, 231 (1979), for the proposition that possession of a weapon requires "actual or physical control of a firearm." However, *Garcia* is distinguishable because there the supreme court limited its holding to possession of a weapon by an intoxicated person. *See* § 18–12–106(1)(d), C.R.S.2009.

In *People v. Tramaglino*, 791 P.2d 1171, 1171–72 (Colo.App.1989), a witness saw the defendant with a firearm that was later found in his car. On review, the division held that this evidence was sufficient to support his conviction for possession of a weapon by a previous offender.

Here, the evidence showed that the informant saw defendant holding the Ruger 9mm at approximately 2:30 a.m. the day before it was seized from the residence. The same day, at about 7 p.m., the informant again spoke with defendant inside the residence and saw the gun sitting on a table. As discussed above, testimony and other evidence established that defendant exercised dominion and control over the residence. Moreover, the informant identified the safe

where the second gun was found as belonging to defendant. We conclude that this evidence was sufficient to support his convictions.

### 3. Defaced Firearm Possession

■ Defendant argues that his conviction for possession of a defaced firearm under section 18–12–103, C.R.S.2009, must be reversed because the evidence was insufficient to prove he possessed the weapon in question. Defendant does not dispute that one of the firearms seized at the residence was defaced. Therefore, based on our conclusion that the evidence supported the jury's finding of possession, we reject his contention.

### 4. Special Offender Sentencing

■ Defendant further contends that the evidence was insufficient to support his conviction as a special offender under section 18–18–407(1)(f), C.R.S.2009. Again, we perceive no error.

■ Section 18–18–407(1)(f) provides that one convicted of a felony shall be sentenced as a special offender if he or she "used, displayed, possessed, or had available for use a deadly weapon." The statute requires the prosecution "to show some nexus between the deadly weapon and the drug offense upon which the enhanced sentence is based." *People v. Atencio*, 878 P.2d 147, 150 (Colo.App. 1994); *see also People v. Tweedy*, 126 P.3d 303, 308 (Colo.App.2005) (close spatial proximity between weapon and drugs is sufficient to permit inference of nexus).

In *Atencio*, the defendant was arrested in his living room. Police found guns in an adjoining bedroom. 878 P.2d at 148. On review, a division of this court held this evidence was sufficient to establish that the defendant had weapons "available for use" within the meaning of the statute. *Id.* at 150. Police also found drugs "on the premises." *Id.* at 148. Without specifically identifying the location of the drugs with respect to the weapons, the division held that this evidence was sufficient to establish a nexus between the guns and the drugs. *Id.* at 150.

Here, as discussed above, sufficient evidence supported the jury's findings that de-

fendant possessed both controlled substances and weapons. Moreover, police found drugs and guns in various places throughout the residence, including in a safe that contained both drugs and a gun. This evidence was sufficient to allow the jury to infer a nexus between the guns and the drugs. *See Tweedy*, 126 P.3d at 305–07 (sufficient evidence of nexus where drugs and weapon were found together in a safe).

Finally, contrary to defendant's contention, the recent adoption of H.B. 10–1352, which limits special offender sentencing based on possession of a weapon to cases in which the defendant "possessed on his or her person or within his or her immediate reach [a deadly weapon] at the time of the commission of the offense" has no effect on this case. *See* Ch. 259, sec. 7, § 18–18–407, 2010 Colo. Sess. Laws 1170.

■ "A defendant is not entitled to the ameliorative effects of amendatory legislation if the legislature has not indicated its intent to require retroactive application thereof." *People v. Pineda–Eriza*, 49 P.3d 329, 333 (Colo.App.2001); *see also People v. Patnode*, 126 P.3d 249, 258 (Colo.App.2005) (if General Assembly states that amendatory legislation "shall apply to offenses committed on or after" the effective date, courts may not apply amendment to offenses committed before that date). By its express language, the amendment to section 18–18–407 does not apply retroactively. Ch. 259, sec. 27(2), 2010 Colo. Sess. Laws 1177. The title of the amendatory bill ("Concerning *changes* to crimes involving controlled substances ..." (emphasis added)), makes clear that the amendment represents a change in the law, not a clarification of existing law.

### III. Conclusion

The judgment and sentence are affirmed.

Judge GRAHAM and Judge LOEB concur.