**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Gary James HEILMAN, Defendant– Appellee.**

No. 01SA360.

Supreme Court of Colorado, En Banc.

April 22, 2002.

Stuart A. Vanmeveren, District Attorney, Loren B. Schall, Assistant District Attorney, Mary Joan Berenato, Deputy District Attorney, Fort Collins, CO, Attorneys for Plaintiff–Appellant.

Daniel E. Quinn, Fort Collins, CO, Attorney for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, the prosecution challenges the trial court's suppression of evidence obtained as a result of the search of a lawfully parked van. We agree with the trial court that the officer seized the defendant and his van without reasonable suspicion and hold that the trial court properly suppressed evidence obtained from this illegal seizure. The encounter between the defendant and the officer was not consensual.

## I.

State Trooper Robert F. Kaminky (Officer Kaminky) was on patrol on the afternoon of June 22, 2001 in Larimer County, Colorado. He was driving by Donath Lake, located near the intersection of County Roads 30E and 30, when he observed a plumbing van parked in a pull-off area that bordered the lake. Two men were sitting inside the van and one man was standing just outside of it.

Wondering if the occupants of the van needed assistance, Officer Kaminky turned the patrol car around in a U-turn and drove back toward the van. Defendant Gary James Heilman (Heilman), who was sitting in the driver's seat, looked up and saw the approaching patrol car. The officer saw Heilman's eyes widen. Heilman appeared to throw something to the floor of the van.

The officer parked approximately ten feet from the van in a T-formation, jumped out of the car, hurried to the van on foot, and said that "he wanted to see everybody's hands." He asked Heilman "What are you doing?" and "Do you need any assistance?" Heilman answered that he did not need assistance and said, "We are just sitting here, relaxing after work." Officer Kaminky then asked Heilman, "What did you throw down?" Heilman pointed to a half-empty 12–pack of Mountain Dew sitting in between the driver's seat and the passenger's seat, gesturing to the center of the van with a sweeping motion. Officer Kaminky asked whether there were any weapons or contraband in the vehicle. Heilman responded, "No. You can sniff around, and you won't find anything." Heilman made a sweeping motion as he said this.

Officer Kaminky then ordered all persons out of the van, ordered them to put their hands behind their heads with fingers interlocked, called for backup, conducted a patdown search of the three individuals and, when back-up officers arrived, began searching the vehicle. None of the three persons appeared to be intoxicated.[1]

In searching the van, Officer Kaminky found a black nylon bag. All of the men denied that the bag was theirs. Upon open-

---

1. At the suppression hearing, each of the three occupants of the van testified and identified themselves as a member of the plumbing crew for which Heilman was the supervisor.

ing the bag, Officer Kaminky found identification cards belonging to Heilman and a small tin containing what the officer assumed to be illegal drugs. The officer then arrested Heilman.

The district attorney charged Heilman with two counts of possession of a schedule II controlled substance, a class 4 felony. § 18–18–405(2)(a)(I), 6 C.R.S. (2001). Heilman filed motions to suppress the evidence and statements, alleging that they were the fruit of an unconstitutional search and seizure of his person and property. The trial court concluded that Officer Kaminky, through a show of force, had effectuated a non-consensual seizure of Heilman and the van without reasonable suspicion. The prosecution argued that the encounter was consensual and that Heilman's statement, "You can sniff around; you won't find anything" constituted consent to search and the evidence should not have been suppressed. We need not reach the consent issue, because: (1) the prosecution did not meet its burden to show that the encounter was consensual; and (2) the trial court's findings, based on the evidence at the suppression hearing, support its conclusion that a seizure without reasonable suspicion occurred. We uphold the trial court's suppression order.

## II.

### A. Standard of Review

The United States and Colorado Constitutions protect against unreasonable searches and seizures. *See* U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7; *Outlaw v. People,* 17 P.3d 150, 154 (Colo. 2001). They do not proscribe all contact between police and citizens, but apply to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals. *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *see also People v. Paynter,* 955 P.2d 68, 71 (Colo.1998). As the United States Supreme Court explained in *Terry v. Ohio,* 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the

liberty of a citizen may we conclude that a 'seizure' has occurred."

Police-citizen encounters are of three different types: (1) arrests; (2) investigative stops or detentions; and (3) consensual interviews or encounters. *People v. Jackson,* 39 P.3d 1174, 1179 (Colo.2002); *People v. Thomas,* 839 P.2d 1174, 1177 (Colo.1992). Each of these categories requires varying levels of justification and protection. *People v. Cascio,* 932 P.2d 1381, 1385 (Colo.1997). While arrests and investigatory stops or detentions are seizures implicating the protections of the Fourth Amendment and Article II, section 7, consensual encounters are not. *Jackson,* 39 P.3d at 1179. Thus, consensual encounters need not be supported by probable cause or reasonable suspicion. *Id.*

As the moving party, the defendant has the burden of going forward with evidence of an impermissible seizure. *Outlaw,* 17 P.3d at 155. This burden requires the defendant to make two showings: (1) the point at which he was "seized" within the meaning of the Fourth Amendment; and (2) that the seizure was unconstitutional. *Id.* If the defendant satisfies these requirements, the burden of going forward then shifts to the prosecution. *Jackson,* 39 P.3d at 1180. The burden of proof, however, always remains with the prosecution. *Id.; see also People v. Canton,* 951 P.2d 907, 909 n. 3 (Colo.1998) (holding that when police detain a person without a warrant, the burden of proof is on the prosecution to prove the constitutional validity of the stop and any subsequent search).

In reviewing the trial court's suppression order, we defer to a trial court's factual findings and will not disturb them if supported by competent evidence in the record. *Outlaw,* 17 P.3d at 155. However, we review the trial court's conclusions of law de novo. *People v. Haley,* 41 P.3d 666, 670 (Colo.2001). A consensual encounter consists of a request for voluntary cooperation by the police of an individual who should feel free to leave at any time during such an encounter. *People v. Padgett,* 932 P.2d 810, 814 (Colo. 1997). During a consensual interview, "a police officer seeks the voluntary cooperation

of an individual by asking non-coercive questions." *Paynter*, 955 P.2d at 72; *see also People v. Cervantes–Arredondo*, 17 P.3d 141, 146 (Colo.2001). The test is whether a reasonable person under the circumstances would believe that he or she was free to leave and/or disregard the officer's request for information. *Thomas*, 839 P.2d at 1177–78. This test is objective in nature, based on the factual circumstances surrounding the encounter. *Paynter*, 955 P.2d at 72. Inherent social pressure to cooperate with the police is not itself a sufficient basis for declaring the encounter nonconsensual. *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994).

"[A]ny assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account 'all of the circumstances surrounding the incident' in each individual case." *Michigan v. Chesternut*, 486 U.S. 567, 572, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), quoting *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Because it is fact-based, this test is "necessarily imprecise." *Id.* at 573, 108 S.Ct. 1975. A totality of the circumstances analysis requires an examination of the behavior of the parties, as well as the physical, temporal, and social context of the encounter. "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Cascio*, 932 P.2d at 1386, quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

Representative examples of when a seizure occurs include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

Applying the totality of the circumstances analysis, the trial court, and we, must assess "whether the circumstances surrounding an encounter between a police officer and an occupant of a vehicle are so intimidating as to demonstrate that a reasonable, innocent person would not feel free to decline the officers' requests or otherwise terminate the encounter." *Jackson*, 39 P.3d at 1183–84 (setting forth a number of factors pertinent to a totality of the circumstances analysis). In *Jackson*, we held that any reasonable person would have understood the officer's instruction to "hang tight in the car" as a command to stay. That instruction, combined with the officer's action in taking the defendant's identification back to the patrol car for a warrants check, constituted a seizure without reasonable suspicion and required suppression of the subsequently discovered evidence. *Id.* at 1189–90.

## B. The Seizure In This Case

Heilman met his initial burden of showing that a seizure implicating the Fourth Amendment occurred, and the prosecution did not sustain its burden of proof to demonstrate a consensual encounter. The trial court found that Officer Kaminky approached the van in his marked patrol car at a higher than normal rate of speed and parked in a T-formation close to the van. Although he was carrying a weapon, he did not draw it. Upon encountering Heilman and his companions, the officer ordered the three persons to hold up their hands. After learning that the individuals did not need his assistance, Officer Kaminky began questioning Heilman about what he had thrown down and whether there were weapons or contraband in the vehicle. At the suppression hearing, the three occupants of the van testified that Officer Kaminky's tone was unfriendly and his questioning rapid-fire.

In *People v. Cascio*, we found that an encounter between deputy officers and the occupants of a parked van was consensual. The officer's conduct was "mild mannered"; the officers' greeting to the defendants was friendly and casual. *Cascio*, 932 P.2d at 1387. In contrast, taking into account all of the circumstances, Officer Kaminky's conduct demonstrated that his contact with Heilman escalated into a seizure.

The Seventh Circuit of the United States Court of Appeals found in *United States v. Packer* that police behavior similar to that in the present case constituted a seizure without reasonable suspicion. *See United States v. Packer*, 15 F.3d 654, 657 (7th Cir.1994). In *Packer*, the police responded to an anonymous tip regarding a suspicious vehicle that was parked in a "bad neighborhood" at about one in the morning. The officers parked their cars in front of and behind the defendant's car and shined a light into the car. As an officer approached the car, she asked the occupants to put their hands in the air where she could see them. In concluding that ordering the defendant to raise his hands constituted a display of authority, the court in *Packer* reasoned that "[w]hile the officer's prudential procedures are of course fully justified by concerns for police safety, a reasonable person in Defendant's position would not feel that he was free to leave." *Id.*

Although the prosecution seeks to justify Officer Kaminky's conduct on officer safety considerations, the trial court's findings support its legal conclusion that the officer was not seeking Heilman's cooperation and he was not free to leave. Reasonable persons would not feel free to disobey the order to raise their hands to plain view while a uniformed officer approached them with his weapon displayed on his hip, ordered them out of their vehicle, directed them to put their hands behind their heads, patted them down, and commenced to search the vehicle.[2]

 Here, the "show your hands" command was at least the equivalent of the "hold tight" instruction in *Jackson*, and the nature and tone of the questioning demonstrated that Officer Kaminky—after learning that the persons in the van did not need his assistance—had commenced an investigation for criminal activity under circumstances demonstrating that the persons were not free

to leave. A seizure occurred without facts justifying reasonable suspicion of a person having committed a crime. *Cf. People v. Garcia*, 11 P.3d 449, 453–54 (Colo.2000) (holding that police officers possessed reasonable suspicion where in the course of interviewing people at a crime scene, they saw drug paraphernalia at the defendant's feet). Officer Kaminky had not observed a traffic violation or any other circumstance indicating criminal activity. For reasonable suspicion to exist, the police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868.

In this case, the officer testified that he had observed a furtive gesture by Heilman. He based his suspicion of illegal activity solely on that observation. We have held that a "furtive gesture" is too ambiguous, standing alone, to constitute the basis for an investigatory stop. *Outlaw*, 17 P.3d at 157; *Thomas*, 660 P.2d at 1275.

 When an illegal seizure has occurred, it is the burden of the prosecution to show that statements or evidence gathered as a result were not the fruit of the prior illegality. *People v. Rodriguez*, 945 P.2d 1351, 1364 (Colo.1997). In *Rodriguez*, we held that:

> [E]vidence obtained by a purported consent that follows improper conduct by police must meet a two-fold test: (1) was the consent obtained through exploitation of the prior illegality; and (2) was the consent voluntary? Evidence obtained by a purported consent is admissible only if it is determined that the consent was *both* voluntary and not an exploitation of the prior illegality.

2. We do not view as inconsistent with today's holding our decisions in *People v. Smith*, 13 P.3d 300 (Colo.2000) and *People v. Garcia*, 11 P.3d 449 (Colo.2000). In *Smith*, we held that a police officer making an investigatory stop may command a suspect to put his hands in the air and step out of the vehicle—and restrain the suspect by handcuffs, if necessary—when "the officer possesses a reasonable belief that the occupants pose a danger." *Smith*, 13 P.3d at 305. Both of

those decisions involved: (1) nighttime investigatory stops; and (2) articulated facts justifying a reasonable belief of danger to officer safety. Here, in contrast, it was broad daylight, none of the three occupants of the van took any action supporting a reasonable belief of danger to the officer, and reasonable suspicion was lacking for a criminal investigation into the activity of the occupants.

*Id.* at 1364 (quotation marks omitted). A reviewing court must consider the "temporal proximity of the arrest and the consent, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct" in determining whether the consent was an exploitation of the prior illegality. *Id.*, quoting *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

The purported consent in this case flowed directly from the illegal seizure and was in close temporal and physical proximity to it. The prosecution did not carry its burden of proof to demonstrate that the purported consent was attenuated from the prior illegal conduct. *See Rodriguez*, 945 P.2d at 1364–65. The trial court properly suppressed the evidence. *Id.*

### III.

Accordingly, we affirm the trial court's suppression order, and we return this case to the trial court for further proceedings consistent with this opinion.