The PEOPLE of the State of Colorado, Petitioner–Appellant,

In the Interest of J.W.T., a Child, Juvenile–Appellee.

No. 03CA0989.

Colorado Court of Appeals, Div. IV.

April 8, 2004.

Rehearing Denied May 13, 2004.

§ 24–51–1105, C.R.S.2003.

A. William Ritter, Jr., District Attorney, Evan W. Jones, Deputy District Attorney, Denver, Colorado, for Petitioner–Appellant.

David S. Kaplan, Colorado State Public Defender, Marques Ivey, Deputy State Public Defender, Denver, Colorado, for Juvenile–Appellee.

Opinion by Judge GRAHAM.

The People appeal the Denver Juvenile Court's dismissal of the petition in delinquency filed against J.W.T., a juvenile, charging him with acts that, if committed by an adult, would constitute the offense of unlawful possession of a weapon on school grounds, a class six felony under § 18–12–105.5(1), C.R.S.2003. We affirm.

The petition in delinquency alleged that J.W.T., who was thirteen years old at the time, was found in possession of a deadly weapon at his public middle school. The weapon in question was a knife with a blade that was three inches in length. Through counsel, J.W.T. filed a motion to dismiss the case, arguing that under the definition in § 18–12–101(1)(f), C.R.S.2003, a knife must be over three and one-half inches in length for its possession to be punishable under § 18–12–105.5(1). After a hearing, the juvenile court dismissed the case, determining that, because the prosecution had not shown that J.W.T.'s knife was over three and one-half inches long or that he used or intended to use the knife to cause injury, the statute was inapplicable.

On appeal, the People contend that the juvenile court erred in its interpretation of § 18–12–105.5(1). Specifically, the People argue that a plain reading of the statute discloses that the possession of a deadly weapon is prohibited and, citing cases stating that a knife is per se a deadly weapon, the possession of any knife is therefore punishable under that provision. We are not persuaded.

The court's fundamental responsibility in statutory interpretation is to give effect to the General Assembly's purpose or intent in enacting the legislation, and the analysis begins with the plain language of the statute itself. *Martin v. People,* 27 P.3d 846, 851–52 (Colo.2001). The plain and literal meaning of statutory language should be given effect, unless to do so would lead to absurd results. *People in Interest of G.M.,* 844 P.2d 1341, 1343 (Colo.App.1992).

It is presumed that, in enacting legislation, the General Assembly intended that the entire statute be effective. Section 2–4–201(1)(b), C.R.S.2003. If the language of the statute unambiguously sets forth legislative intent, a reviewing court need not apply additional rules of statutory construction to determine the statute's meaning. *Martin v. People, supra.*

In analyzing a statute, a court "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988). Where possible, statutes governing the same subject must be reconciled. *Bynum v. Kautzky,* 784 P.2d 735, 738 (Colo.1989). Further, a construction that would render part of a statute meaningless should be avoided. *People v. Terry,* 791 P.2d 374, 376 (Colo.1990).

Here, three sections of the criminal code are at issue. Section 18–12–105.5(1), defining unlawful possession of weapons on school grounds, provides:

A person commits a class 6 felony if such person knowingly and unlawfully and without legal authority carries, brings, or has in such person's possession *a deadly weapon as defined in section 18–1–901(3)(e)* in or on the real estate and all improvements erected thereon of any public or private

elementary, middle, junior high, high, or vocational school....

(Emphasis added.)

Section 18–1–901, C.R.S.2003, provides definitions generally applicable to the Criminal Code, in pertinent part:

(1) Definitions set forth in any section of this title apply wherever the same term is used in the same sense in another section of this title *unless the definition is specifically limited* or the context indicates that it is inapplicable.

....

(3)(e) "Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:

(I) A firearm, whether loaded or unloaded;

(II) A knife;

(III) A bludgeon; or

(IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

(Emphasis added.)

However, § 18–12–101, C.R.S.2003, provides definitions applicable to article 12 of the Code, which concerns weapons offenses:

(1) As used in this article, unless the context otherwise requires:

(f) "Knife" means any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds, but does not include a hunting or fishing knife carried for sports use.

Based on the foregoing, the People argue that the definition of knife found in § 18–12–101(1)(f) is inapplicable because "the context otherwise requires" that the definition of "deadly weapon" be used. Relying on various cases, the People point out that knives have repeatedly been referred to as "per se" deadly weapons. However, we disagree that these references are dispositive of the question of whether a knife, without more, constitutes a deadly weapon for purposes of § 18–12–105.5(1).

The People cite *Bowers v. People,* 617 P.2d 560 (Colo.1980), in support of their argument that knives are per se deadly weapons, regardless of blade length. In *Bowers,* the supreme court addressed the question of whether a liquor bottle could be considered a "bludgeon" or "any other weapon" actionable as a deadly weapon under § 18–1–901(3)(e). The Court noted that § 18–1–901(3)(e) created two separate categories of deadly weapons. "Firearms, knives, and bludgeons are deadly weapons by their essential nature. All other items may or may not be deadly weapons, depending upon how they are used or intended to be used." *Bowers v. People, supra,* 617 P.2d at 563; *see also People v. Saleh,* 45 P.3d 1272 (Colo.2002)(quoting *Bowers v. People* in case involving interpretation of § 18–1–901(3)(e)(IV)); *People v. Ross,* 831 P.2d 1310 (Colo.1992)(noting *Bowers v. People* in observing that § 18–1–901(3)(e)(IV) provides a test for determining whether items other than firearms, knives, or bludgeons are deadly weapons).

However, the plain language of § 18–1–901(3)(e) defines a deadly weapon as "any of the following which in the manner it is used or intended to be used is capable of causing death or serious bodily injury." Thus, a knife is a per se deadly weapon when it is used or intended to be used during the commission of another crime. *See, e.g.,* § 18–3–202(1)(e)–(e.5), C.R.S.2003 (first degree assault involving threatened use of a deadly weapon); § 18–3–203(1)(b), (d), C.R.S.2003 (second degree assault involving use of a deadly weapon); § 18–3–206, C.R.S.2003 (felony menacing involving use or threatened use of a deadly weapon); § 18–3–302(4)(a)(II)–(III), C.R.S.2003 (kidnapping); § 18–3–402(5)(a)(III), C.R.S.2003 (sexual assault); § 18–4–302(1)(b), C.R.S.2003 (aggravated robbery); *see also Williams v. People,* 687 P.2d 950, 954–55 (Colo.1984)(discussing amendment of the definition of deadly weapon in response to supreme court's opinion in *People v. McPherson,* 200 Colo. 429, 619 P.2d 38 (1980)).

Here, however, the issue is the interpretation of "deadly weapon" as that term is used in another section of the criminal code. Section 18–1–901(1) specifically states that the

definitions in that section apply unless specifically limited elsewhere. Section 18-1-901(3)(e) does not specifically define the term "knife." However, § 18-12-101(1)(f) specifically limits the term "knife" to a weapon with a blade longer than three and one-half inches in length. Consequently, reading and harmonizing these provisions together, the plain language of both provisions establishes that, for purposes of § 18-12-105.5(1), where the deadly weapon at issue is a knife, it must qualify as a "knife" under § 18-12-101(1)(f).

Moreover, we observe that the definitional provisions of § 18-12-101 were revised and reenacted in 1971. The definition of "knife" was the same as it appears in the current statute. Colo. Sess. Laws 1971, ch. 121, § 40-12-101(1)(h) at 481. The provision making it illegal to possess a deadly weapon on school grounds was originally enacted in 1989. See Colo. Sess. Laws 1989, ch. 167, § 18-12-105(1)(d) at 911. The provision was moved in 1993 to its current location, § 18-12-105.5(1). Colo. Sess. Laws 1993, ch. 214, at 965-66.

We must presume that the General Assembly was cognizant of the preexisting definition of "knife" in § 18-12-101(1)(f) when it enacted § 18-12-105.5(1). The term "knife" as used in the definition of deadly weapon in § 18-1-901(3)(e) is not specifically defined. To interpret "deadly weapon" as that term is used in § 18-12-105.5(1) without incorporating the § 18-12-101(1)(f) definition of the term "knife" would render the definitional provision meaningless. See People v. Drake, 983 P.2d 135, 136 (Colo.App.1999)(courts may not assume a legislative intent that would vary the words used by the General Assembly); see also People v. Sharp, 979 P.2d 33, 35 (Colo.App.1998)(interpretations that render statutory provisions superfluous should be avoided).

We are also unpersuaded by the People's reliance on the language in § 18-12-101(1), which states that the definitions of that section apply "unless the context otherwise requires." While the People argue that the context of § 18-12-105.5(1) requires that the deadly weapon definition apply, we again note that the term "knife" is not specifically defined in the deadly weapons statute. Instead, that definition is specifically limited by the definition contained in § 18-12-101(1)(f).

Thus, we conclude that the plain language of the two definitional provisions, §§ 18-1-901 and 18-12-101, compels the conclusion that a person carrying a knife with a blade less than three and one-half inches in length, on school grounds, cannot be prosecuted under § 18-12-105.5(1) unless the prosecution can also establish that the person used or intended to use the knife as a weapon.

We recognize the People's observation that this construction can lead to the absurd result that a person can carry a knife less than three and one-half inches in length on school grounds as long as he or she does not use or intend to use it as a weapon. We are not suggesting that schools may not adopt regulations prohibiting possession of any knife or weapon. Our holding is directed to situations where a juvenile is charged with a felony necessitating proof of specified elements of the crime. It is up to the General Assembly to determine policy regarding what weapons are punishable as felonies when possessed on school grounds. Cf. § 22-33-106(1)(d)(I), C.R.S.2003 (mandatory expulsion from school of children who carry, bring, use, or possess a "dangerous weapon" without authorization; defining "dangerous weapon" in part as "a fixed blade knife with a blade that measures longer than three inches in length or a spring loaded knife or a pocket knife with a blade longer than three and one-half inches.").

■ Here, the knife found in J.W.T.'s possession had a blade that was not longer than three and one-half inches in length. Because of its length, the blade does not qualify as a knife as defined, and it could only qualify as a "knife" under the catchall provision of § 18-12-101(1)(f) if it was "capable of inflicting cutting, stabbing, or tearing wounds." To so qualify the knife, the prosecution would have been required to prove that J.W.T. intended to use the knife as a weapon. See A.P.E. v. People, 20 P.3d 1179, 1183 (Colo.2001)(because all knives of any blade length necessarily meet the catchall definition in § 18-12-101(1)(f), a conclusion that any knife is per se illegal would render meaningless the blade length distinction).

At the motions hearing held in this case, the prosecution stated that it did not intend to present evidence that J.W.T. was using the knife or that he intended to use it. Consequently, the juvenile court properly dismissed the charges.

The judgment is affirmed.

Judge CASEBOLT and Judge LOEB concur.