The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Charles William TWEEDY,
Defendant–Appellant.

No. 04CA0037.

Colorado Court of Appeals,
Div. II.

Oct. 20, 2005.

Certiorari Denied Jan. 9, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Cynthia Sheehan, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Charles William Tweedy, appeals the judgments of conviction entered upon the jury verdicts finding him guilty of possession with intent to distribute a schedule II controlled substance, possession of drug paraphernalia, and special drug offender. We affirm.

Hotel staff contacted the police after observing individuals come and go from a particular room throughout the night. Upon responding to the scene at 5:10 a.m., the police contacted the occupants of the room, one of whom was defendant. After obtaining defendant's consent to search the room, the police recovered six bags of methamphetamine (3.23 grams), two digital scales, a small scoop, and a small burned pipe. They also found a martial arts throwing star on defendant and, in a locked safe next to the digital scales and two of the six bags of methamphetamine, two martial arts double-bladed knives.

## I. Suppression of Evidence

█ Initially, defendant contends that the trial court erred in not suppressing, as the fruits of an illegal seizure, the drugs, drug paraphernalia, and knives. In this regard, he asserts that he had already been subjected to an illegal seizure when he gave his consent to search the room. We disagree.

█ The United States and Colorado Constitutions protect citizens from unreasonable searches and seizures. They do not, however, proscribe all contact between police and citizens. *People v. Heilman*, 52 P.3d 224, 227 (Colo.2002).

█ There are three categories of contacts between police and citizens: (1) arrests; (2) investigatory stops; and (3) consensual encounters. Arrests and investigatory stops are seizures implicating the constitutional protections of the Fourth Amendment and Colo. Const. art. II, § 7. *People v. Morales*, 935 P.2d 936, 939 (Colo.1997). In contrast, consensual encounters are not seizures, but are contacts in which the voluntary cooperation of citizens is elicited through noncoercive questioning. *People v. Cervantes–Arredondo*, 17 P.3d 141, 146 (Colo.2001). Consensual encounters do not, then, implicate constitutional protections against unreasonable seizures. *See People v. Jackson*, 39 P.3d 1174, 1180 (Colo.2002).

█ Whether a seizure occurred depends on whether a reasonable, innocent person in the defendant's position would have believed that he or she was free to leave or disregard the officer's requests. *See People v. Jackson, supra*, 39 P.3d at 1182, 1186; *Outlaw v. People*, 17 P.3d 150, 156 (Colo.2001).

█ "This test is objective in nature, based on the factual circumstances surrounding the encounter." *Outlaw v. People, supra*, 17 P.3d at 155; *see also People v. Melton*, 910 P.2d 672, 677 (Colo.1996)("[U]nless the police officer's subjective intent in approaching the individual is communicated to that individual, it is not relevant to the determination of whether the encounter is a [seizure] or a consensual encounter.").

In *Outlaw v. People, supra*, 17 P.3d at 156, the supreme court recognized the following examples of when a seizure occurs: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the citizen's person; (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled; and (5) the officers' requiring that the citizen alter his or her direction of travel, walk back to the officers, or remain while police investigated him or her.

As the moving party, defendant had the burden of showing (1) that a "seizure" occurred and (2) that the seizure was unconstitutional. *See Outlaw, supra*, 17 P.3d at 155.

When reviewing a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent evidence in the record. However, we review the trial court's legal conclusions de novo. The totality of the circumstances must be examined, including the behavior of the parties and the physical, temporal, and social context of the encounter. *People v. Heilman, supra*, 52 P.3d at 227–28.

Here, the trial court found, with record support, that (1) three uniformed police officers knocked on the door; (2) the lead officer heard voices from within the room and, while looking through the peephole, noticed movement and light within the room; (3) when defendant opened the door, the lead officer asked permission to come into the room; (4) the lead officer and defendant spoke to one another in a conversational tone of voice; (5) the lead officer advised defendant that the police were there because of a concern that illegal drugs might be in the room; (6) defendant gave permission for the officers to come into the room; (7) although the officers were armed, they did not draw their weapons; (8) the officers split up among the three occupants of the room; (9) the lead officer stood about three to four feet from defendant; (10) the lead officer asked defendant for his identification; (11) before or immediately after asking for the identification, the officer sought permission to search the room; and (12) defendant provided his identification to the officer and gave permission to search the room.

The trial court concluded, and we agree, that, until this point in time, the contact between the police and defendant was consensual in nature. Although the contact occurred early in the morning, the police had reason to believe that the occupants of the room had been awake throughout the night and were still awake. The officers' manner was not threatening, and they made no demands of the occupants. They did not display their weapons, touch the occupants, or use intimidating language or tone of voice. The record supports the trial court's conclusion that defendant voluntarily cooperated with the police, in both allowing them to enter his room and allowing them to search the room.

Any inherent social pressure defendant may have felt to cooperate with the police was not a sufficient basis for concluding that the encounter constituted a seizure. *See People v. Johnson,* 865 P.2d 836, 842 (Colo. 1994). Nor did the encounter become a seizure simply because (1) it took place in a small hotel room, *cf. People v. Coleman,* 55 P.3d 817, 820 (Colo.App.2002)(encounter did not become a seizure simply because it occurred within cramped confines of a bus); (2) three officers were present, *cf. United States v. Durades,* 929 F.2d 1160, 1166–67 (7th Cir.1991) (presence of three officers, who acted professionally at all times, in one apartment with three occupants was not coercive); (3) the officer asked defendant for identification information, *see People v. Jackson, supra,* 39 P.3d at 1187; or (4) the officer failed to inform defendant that he need not comply with that or any other request, *see People v. Jackson, supra.*

Defendant nevertheless asserts that the encounter escalated into a seizure when the officer retained defendant's identification for purposes of running a warrant check. *See People v. Jackson, supra,* 39 P.3d at 1188–89. However, because the warrant check occurred after defendant gave his consent to search the room, his consent was not tainted by any *prior* illegality.

Consequently, we conclude that the trial court properly denied defendant's motion to suppress evidence.

## II.  Special Offender

Defendant contends that his adjudication as a special drug offender must be reversed. We are not persuaded.

### A.  Sufficiency of Evidence

■ Initially, we address defendant's assertion that there is insufficient evidence to support his adjudication as a special drug offender. He argues that there was no evidence that his collector's martial arts knives were deadly weapons. We are not persuaded.

When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Sherwood,* 5 P.3d 956, 959 (Colo.App.2000).

In undertaking this analysis, we recognize that (1) if there is evidence from which one may reasonably infer an element of the charge, the evidence is sufficient to sustain that element, *People v. Caldwell,* 43 P.3d 663, 672 (Colo.App.2001); (2) the prosecution must be given the benefit of every reasonable inference which can be drawn from the evidence, *People v. San Emerterio,* 839 P.2d 1161, 1164 (Colo.1992); and (3) where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *See People v. Carlson,* 72 P.3d 411, 416 (Colo.App.2003).

As pertinent here, a person is a special drug offender if he or she "used, displayed, possessed, or had available for use a deadly weapon as defined in section 18–1–901(3)(e)." Section 18–18–407(1)(f), C.R.S.2005.

In § 18–1–901(3)(e), C.R.S.2005, a deadly weapon is defined as:

any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:

(I) A firearm, whether loaded or unloaded;

(II) A knife;

(III) A bludgeon; or

(IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

Under § 18–1–901(3)(e), "a knife is a per se deadly weapon when it is used or intended to be used during the commission of another crime." *People in Interest of J.W.T.*, 93 P.3d 580, 582 (Colo.App.2004).

According to defendant, his knives could not have been deadly weapons because there was no evidence that they were used or intended to be used to cause serious bodily injury or death. He points out that they were·found in a locked safe.

However, here a police officer testified that the knives were capable of causing serious bodily injury. And although the knives were in the safe, they were found in close proximity to drug paraphernalia and a bag containing methamphetamine. Further, another occupant in the room acknowledged that she had seen defendant go over and shut the door on the safe when he became aware of the presence of the police and before he opened the door to them.

Viewing this evidence in the light most favorable to the prosecution, one could reasonably conclude that, until the police arrived, the knives were readily accessible for use by defendant in connection with his intended drug trafficking activity. *Cf. State v. Johnson*, 94 Wash.App. 882, 974 P.2d 855, 860–61 (1999)(defendant is "armed" for purposes of deadly weapon element, if weapon is "easily accessible and readily available for use," quoting *State v. Valdobinos*, 122 Wash.2d 270, 858 P.2d 199 (1993)). The prosecution was not required to show that the knives were used or intended to be used to cause serious bodily injury or death. *See People in Interest of J.W.T., supra; see also People v. Atencio*, 878 P.2d 147, 150–51 (Colo.App.1994)(applying special offender provision to gun found in close proximity to drugs).

### B.  Jury Instructions

Defendant next contends that the trial court erred in refusing to give his two tendered jury instructions. We disagree.

In *People v. Renfro*, 117 P.3d 43, 48 (Colo. App.2004), a division of this court noted:

Whether additional written jury instructions must be given which properly state the law and fairly and adequately cover issues presented is a matter committed to the sound discretion of the trial court. The trial court's exercise of discretion will not constitute reversible error absent manifest prejudice or a clear showing of abuse of discretion.

(Citation omitted.)

Here, defendant asked the court to instruct the jury as follows:

It is not illegal to own or possess the knives alleged to be deadly weapons in this case. In fact such knives may be carried or concealed on or about a person in his or her own dwelling or on property under his or her control at the time of the act of carrying.

■ The jury had to determine whether defendant "used, displayed, possessed or had available for use" a deadly weapon "during the commission of a felony crime of possession with an intent to distribute a schedule II controlled substance." The legality of simply owning, possessing, carrying, or concealing the knives was irrelevant. Thus, the trial court did not err in refusing this instruction. *See People v. Montoya*, 928 P.2d 781, 784 (Colo.App.1996) (trial court "should not instruct on abstract legal principles unrelated to the issues in controversy"); *see also People v. Covington*, 988 P.2d 657, 663 (Colo. App.1999) ("[a]lthough the instruction was an accurate statement of the law, it was superfluous and should not be given"), *rev'd on other grounds*, 19 P.3d 15 (Colo.2001).

Defendant also requested that the trial court instruct the jury as follows:

The mere presence of knives is not, in and of itself, sufficient to establish that [defendant] used, possessed or had available for use, a deadly weapon during the commission of the charged felony. The evidence must establish beyond a reasonable doubt a nexus or connection between a deadly weapon and the underlying offense.

A trial court may refuse an instruction that contains an incorrect statement of law, *People v. Mandez*, 997 P.2d 1254, 1271 (Colo. App.1999), or that states principles already encompassed elsewhere in the court's in-

structions. *See People v. Frantz*, 114 P.3d 34, 41 (Colo.App.2004).

■ Here, the first sentence of defendant's tendered instruction is an incorrect statement of the law. As defendant argues, a nexus must be shown between the deadly weapon and the drug offense. However, a close spatial proximity between the weapon and the drugs has been held sufficient to permit the jury to infer that nexus. *See People v. Atencio, supra*, 878 P.2d at 150.

The principle set forth in defendant's second sentence was covered by other instructions informing the jury that, to convict defendant of the special offender count, it would have to find, beyond a reasonable doubt, that he "used, displayed, possessed, or had available for use a deadly weapon during the commission of [the crime]." As the division in *People v. Atencio, supra*, 878 P.2d at 150, noted, the words "use, display, possession, or availability for use" are themselves "nexus terms." Thus, we conclude that the court's instructions already contained a nexus requirement.

Defendant's reliance on *State v. Petrak*, 198 Ariz. 260, 8 P.3d 1174 (Ct.App.2000), is misplaced. In *Petrak*, the Arizona Court of Appeals addressed a situation where, without further instruction, a danger existed that the defendant could be convicted of a special offender count based solely on a finding that he possessed a weapon somewhere at the same time the drug offense was being committed.

The court in *Petrak* clarified that the possession of the weapon had to relate to the crime itself for the defendant to be convicted as a special offender:

> Our weapons misconduct statute requires more than a mere temporal nexus between the weapon and the crime alleged. The thrust of the statute is to deter the use of weapons to facilitate crime. The state must prove that the defendant intended to use or could have used the weapon to further the felony drug offense underlying the weapons misconduct charge. Factors tending to show that the weapon was or could be used in this way for a drug offense include the *spatial proximity and*

> *accessibility of the weapon to the defendant and to the site of the drug offense. One or more of these factors may suffice to establish a nexus*, depending upon the crime alleged.

> Because the trial court did not instruct the jury that it was required to find that the weapon was used or available for use or was intended to further the drug offense, the jurors were misled regarding the legal principles to apply in determining guilt.

*State v. Petrak, supra*, 8 P.3d at 1180 (emphasis added).

The emphasized language in *Petrak* does not support the first sentence of defendant's proffered instruction, and the second sentence of his proffered instruction does not explain how the nexus principle should be applied.

Because defendant's proffered instruction was erroneous in part and otherwise encompassed matters addressed elsewhere in the court's instructions, we conclude that the court properly did not give it to the jury.

### C. Continuation of Deliberations After Receipt of Special Offender Verdict

■ Defendant also contends that the trial court erred in ordering the jury to continue deliberating when it returned an inconsistent verdict on the special offender count. We disagree.

The court instructed the jury on the elements of possession with intent to distribute a schedule II controlled substance and the lesser included offense of simple possession of a schedule II controlled substance. The court also instructed the jury that while it could acquit defendant of both possession offenses, it could not find him guilty of both. And the court instructed the jury on the special offender elements as they related to both possession offenses.

The jury found defendant guilty of the greater possession offense, but returned the special offender verdict with respect to the lesser one.

Over defendant's objection, the court reconvened the jury and informed it:

[T]here's an issue with the jury verdicts because, on the special interrogatory verdict concerning the special offender statute, you may only find defendant guilty under that special offender statute of the counts that you have found him guilty of, and here you have marked possession of a Schedule II controlled substance, which was the lesser included, and not marked possession with intent to distribute a Schedule II controlled substance.

So what I would like you to do is go back and deliberate as to whether or not you believe the defendant is guilty of the special offender count as it relates to possession with intent to distribute a Schedule II controlled substance, or not guilty of that count, and return the verdict form accordingly.

After further deliberations, the jury returned a verdict finding defendant guilty of the special offender count in connection with the possession with intent to distribute offense. At that time, the foreperson remarked, "We're sorry, we apologize, we marked the wrong box."

Defendant argues that, inasmuch as the jury's initial verdicts were merely inconsistent, and inconsistent verdicts are permitted under Colorado law, see People v. Frye, 898 P.2d 559, 571 (Colo.1995), the court had to accept the verdicts. We are not persuaded.

We do not agree that the original verdicts returned by the jury were inconsistent. In finding defendant guilty of the greater possession charge, the jury necessarily also found him guilty of the lesser possession charge to which it attached the special offender verdict.

In any event, "[i]n general, a jury may change or modify its verdict up to the point the verdict is accepted by the court and the jury is formally discharged." *Montanez v. People*, 966 P.2d 1035, 1036 (Colo.1998). Thus, a trial court has the authority before accepting a verdict and before discharging a jury to send it back to correct a mistake or to clarify an ambiguity in its verdict. *See Burchett v. Commonwealth*, 734 S.W.2d 818, 820 (Ky.Ct.App.1987); *see also State v. Jefferson*, 938 S.W.2d 1, 21–22 (Tenn.Crim.App. 1996)(upon return of incomplete or inaccurate verdict, trial court may provide supplemental instruction and require that the jury retire to consider further its verdict); *cf. Reifschneider v. City & County of Denver*, 917 P.2d 315, 318 (Colo.App.1995)("If inconsistencies in a jury's verdict indicate confusion, it is appropriate for the court to resubmit the verdict to the jury for clarification and, if necessary, to submit supplemental instructions.").

Here, the jury's original special offender verdict reflected an obvious mistake. A special offender enhancer applies only to a corresponding conviction, and thus, the original special offender verdict, returned in connection with the simple possession offense, was of no effect. Therefore, the trial court did not err in resubmitting the issue to the jury.

The judgments are affirmed.

Judge ROTHENBERG and Judge LOEB concur.