The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 26, 2025

## 2025COA91

**No. 25CA1082, *People v. Romero* — Crimes — Menacing — By
Use of Firearm, Knife, or Bludgeon**

"A person commits the crime of menacing if, by any threat or
physical action, he or she knowingly places or attempts to place
another person in fear of imminent serious bodily injury."
§ 18-3-206, C.R.S. 2025. While menacing is generally a
misdemeanor, it becomes a felony when committed "by the use of a
firearm, knife, or bludgeon." *Id.*

In this case, the district court determined at a preliminary
hearing that the small "hatchet" used by the defendant to threaten
the victim did not qualify as a "knife" under the menacing statute.
As a result, the court reduced the charge from felony to
misdemeanor menacing. However, after applying principles of
statutory construction, a division of the court of appeals concludes

that a reasonable juror could find that this particular weapon is a knife.

Multiple dictionaries broadly define the word "knife" as an instrument for cutting, consisting of a blade and a handle. The division concludes that, when considered in the context of the menacing statute, these definitions are broad enough to encompass the weapon used by the defendant. Accordingly, the division reverses the district court's order and remands the case for the court to reinstate the charge of felony menacing.

COLORADO COURT OF APPEALS      **2025COA91**

---

Court of Appeals No. 25CA1082
Mesa County District Court No. 25CR5040
Honorable Douglas S. Walker, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Diego Santiago Romero,

Defendant-Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

Announced November 26, 2025

---

Daniel Rubinstein, District Attorney, Juliann Lawrence, Deputy District Attorney, Grand Junction, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Olivia L. Williams, Deputy State Public Defender, Grand Junction, Colorado, for Defendant-Appellee

¶ 1 In the movie *Crocodile Dundee* (Rimfire Films 1986), Mick Dundee and his companion, Sue, are mugged by a teenager wielding a switchblade. As Sue urges Mick to hand over his wallet to the mugger because "he's got a knife," Mick calmly glances at the switchblade and responds, "That's not a knife," before producing a much larger Bowie knife and declaring, "That's a knife!" This case — which asks whether a "hatchet" qualifies as a "knife" — reminds us in many ways of that memorable scene.

¶ 2 In Colorado, "[a] person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206, C.R.S. 2025. While menacing is a class 1 misdemeanor, it becomes a class 5 felony when committed "by the use of a firearm, knife, or bludgeon or a simulated firearm, knife, or bludgeon." *Id.*

¶ 3 In this case, the People appeal the district court's order reducing the charge of felony menacing against the defendant, Diego Santiago Romero, to misdemeanor menacing. At a preliminary hearing, the court determined that the small "hatchet" Romero used to threaten the victim did not qualify as a "knife"

1

under the menacing statute.  After considering dictionary definitions of the word "knife" and principles of statutory construction, we conclude that a reasonable juror could find that this weapon is a knife.  Accordingly, we reverse the district court's order and remand the case for the court to reinstate the charge of felony menacing.

## I.     Background

¶ 4     The People charged Romero with felony menacing, and the district court conducted a preliminary hearing.  At the hearing, a police officer testified that the victim reported that, during an argument outside a shop in Grand Junction, Romero pulled a small hatchet from his coat and asked the victim "if we need to squash this beef."  The victim told the officer that Romero repeatedly drew and sheathed the weapon in a threatening manner.

¶ 5     A second officer, who responded to the scene and took the weapon from Romero, testified that the hatchet was approximately ten inches long and consisted of a blade and a handle.  It is pictured below:



¶ 6 The district court found that the evidence was clear that Romero, by both threat and physical action, had knowingly placed or attempted to place the victim in fear of imminent serious bodily injury. *See id.* But because it determined that the weapon Romero used was not a "knife," the court reduced the charge against him to misdemeanor menacing.

¶ 7 The People now appeal.

## II. Standard of Review

¶ 8 A preliminary hearing is "a screening device, designed to determine whether probable cause exists to support charges that an accused person committed a particular crime or crimes." *People v. Treat,* 568 P.2d 473, 474 (Colo. 1977). To establish probable cause,

the prosecution must introduce evidence sufficient to "permit a person of ordinary prudence and caution to form a reasonable belief that the accused committed the offense or offenses charged." *People v. Walker*, 675 P.2d 304, 306 (Colo. 1984). The district court "must view all evidence and draw all inferences in favor of the prosecution." *People v. Hall*, 999 P.2d 207, 221 (Colo. 2000).

¶ 9 We review a district court's probable cause ruling at a preliminary hearing for an abuse of discretion, and we will not reverse such a ruling absent a showing that it is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law. *People v. Rieger*, 2019 COA 14, ¶ 7. Because this case hinges on the interpretation of the word "knife" as used in the menacing statute, we turn to rules of statutory construction.

¶ 10 The district court's statutory interpretation presents a question of law that we review de novo. *Id.* at ¶ 8. We aim to effectuate the legislature's intent, and, in doing so, "we look first to the language of the statute itself, reading words and phrases in context and construing them according to rules of grammar and common usage." *Id.* at ¶ 9 (quoting *People v. Butler*, 2017 COA 117, ¶ 24). We read and consider the statute as a whole, construing it

4

"to give consistent, harmonious, and sensible effect to all its parts." *People v. Garcia*, 2016 COA 124, ¶ 9 (quoting *People v. Dist. Ct.*, 713 P.2d 918, 921 (Colo. 1986)).  And we avoid "constructions that would lead to an illogical or absurd result, along with those which would be at odds with the overall legislative scheme."  *Id.*

¶ 11    "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *People v. Hill*, 228 P.3d 171, 173-74 (Colo. App. 2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  If the statute's language is clear, we must apply it as written and need look no further.  *Rieger*, ¶ 10.  But if the language is ambiguous — that is, if it is "reasonably susceptible of multiple interpretations" — we may turn to other tools of statutory interpretation.  *Hice v. Giron*, 2024 CO 9, ¶ 10 (quoting *McBride v. People*, 2022 CO 30, ¶ 23).

### III.    The Menacing Statute

¶ 12    The menacing statute was amended effective March 1, 2022.  Ch. 462, secs. 195, 803, § 18-3-206, 2021 Colo. Sess. Laws 3173,

3332.  We discuss the statute before and after the amendment to provide context for Romero's arguments.

¶ 13     Before 2022, the menacing statute provided that menacing was a felony if committed "[b]y the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." § 18-3-206, C.R.S. 2021.

¶ 14     A deadly weapon is (1) "[a] firearm, whether loaded or unloaded"; or (2) "[a] knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." § 18-1-901(1), (3)(e), C.R.S. 2025 (providing definitions applicable to the entire criminal code).

¶ 15     Effective March 1, 2022, the legislature amended the menacing statute to provide that menacing was a felony "if committed by the use of a firearm, knife, or bludgeon or a simulated firearm, knife, or bludgeon." § 18-3-206, C.R.S. 2025.  The statute does not define the word "knife."  *Id.*

## IV.   Discussion

¶ 16     The People argue, first, that we should apply the definition of "knife" found in section 18-12-101(1)(q), C.R.S. 2025, which defines a knife as "any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds," excluding a hunting or fishing knife carried for sports use.  But as Romero points out, this definition is expressly limited to the word knife "[a]s used in this article 12" of the criminal code. § 18-12-101(1).  The menacing statute, by contrast, is found in article 3.  We thus conclude that the definition of knife applicable to article 12 does not define what a knife is for purposes of the menacing statute.  *See People in Interest of J.W.T.*, 93 P.3d 580, 582 (Colo. App. 2004) (section 18-12-101 "provides definitions applicable to article 12" of the criminal code).

¶ 17     Next, the People argue that the weapon Romero used falls within dictionary definitions of "knife."  *See Cowen v. People*, 2018 CO 96, ¶ 14 (in the absence of a statutory definition, "we may consider a definition in a recognized dictionary" to determine the ordinary meaning of a word).  Although both parties refer to the

object Romero used to threaten the victim as a "hatchet," we are not bound by that label. Instead, our analysis is guided by its specific characteristics. Multiple dictionaries broadly define the word "knife" as an instrument for cutting, consisting of a blade and a handle. *See* Webster's Encyclopedic Unabridged Dictionary of the English Language 1062 (2001) (defining "knife" as "an instrument for cutting, consisting essentially of a thin, sharp-edged, metal blade fitted with a handle"; "a knifelike weapon"; "any blade for cutting"); Oxford Dictionary of English 973 (3d ed. 2010) (defining "knife" as "a cutting instrument composed of a blade and a handle into which it is fixed, either rigidly or with a joint"; "an instrument such as this used as a weapon"); Webster's Third New International Dictionary 1249 (2002) (defining "knife" as "a simple instrument used for cutting consisting of a sharp-edged [usually] steel blade provided with a handle"; "a weapon consisting of or resembling a knife"). The weapon in question is designed for cutting or chopping,

featuring a sharp-edged metal blade attached to a handle —

characteristics similar to those of a cleaver.[1]

¶ 18     But we need not decide whether a hatchet qualifies as a knife

in the abstract; rather, our task is to determine whether a

reasonable juror could find that the particular weapon Romero used

constitutes a knife in the context of the menacing statute.  *See Hill*,

228 P.3d at 173-74 (when interpreting a statute, we read words

within the broader context of the statute as a whole).  The statute

prohibits knowingly placing or attempting to place another person

in fear of imminent serious bodily injury, and it provides that doing

so with a knife is a felony.  § 18-3-206.  In the context of placing

another person in fear of imminent serious bodily injury, we

conclude that the weapon Romero used is not meaningfully

different from any other sharp-edged blade used for cutting and

fitted with a handle.  Whether threatened with the hatchet or

---

[1] A cleaver is a type of knife.  *See* Webster's Encyclopedic Unabridged Dictionary of the English Language 384 (2001) (defining "cleaver" as "a heavy, broad-bladed knife or long-bladed hatchet, [especially] one used by butchers for cutting meat into joints or pieces"); Oxford Dictionary of English 324 (3d ed. 2010) (defining "cleaver" as "a tool with a heavy, broad blade, used by butchers for chopping meat").

another type of knife, the imminent serious bodily injury feared by the victim would be the same: being wounded by cutting or stabbing.

¶ 19     Although we must give effect to a statute's plain and ordinary meaning, "the intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result." *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998).  We agree with the People that, even assuming arguendo that the hatchet does not fall within the literal meaning of the word "knife," it would be illogical for the statute to treat this particular weapon differently from any other sharp-edged blade used for cutting and fitted with a handle.  For example, it would be absurd to conclude that Romero could be charged with felony menacing if he knowingly placed or attempted to place another person in fear of imminent serious bodily injury using a dinner knife, but he could not be so charged for using a hatchet.  Although both share the essential characteristics of a "knife," a hatchet is far more threatening and dangerous than a dinner knife.  Thus, we must eschew an interpretation that "would lead to an illogical or absurd result."  *Garcia*, ¶ 9.

¶ 20     We are not persuaded otherwise by Romero's arguments that

(1) we must construe the word "knife" narrowly to give effect to the

2022 legislative change and (2) the weapon he used is more akin to

an axe than a knife.

¶ 21     As to the legislative change, we agree with Romero that the

amendment indicates the legislature's intent to narrow the scope of

items that can trigger a felony menacing charge.  Before 2022,

menacing was a felony when committed not only with a firearm,

knife, or bludgeon, but also with "any other weapon, device,

instrument, material, or substance, whether animate or inanimate,

that, in the manner it is used or intended to be used, is capable of

producing death or serious bodily injury."  § 18-1-901(3)(e); *see*

§ 18-3-206, C.R.S. 2021.  Now, only the use of a firearm, knife, or

bludgeon, or a simulated version of those weapons, can trigger a

felony menacing charge.  § 18-3-206, C.R.S. 2025.  But the

amendment does not indicate any intent to narrow the definition of

a "knife."  Menacing another person with a knife was a felony before

the legislative change and remains so now.

¶ 22     As to Romero's argument that the weapon he used is more

akin to an axe, he does not explain which of its characteristics meet

11

the definition of an axe but not the definition of a knife.  *See* Oxford Dictionary of English at 112 (defining "axe" as "a tool used for chopping wood, typically of iron with a steel edge and wooden handle"); Webster's Third New International Dictionary at 153 (defining "axe" as "a cutting tool or implement that consists of a relatively heavy edged head fixed to a handle, the edge or edges being parallel to the handle so as to be suited for striking, and that is used [especially] for felling trees, chopping and splitting wood, and hewing timber").  More importantly, however, the overlap between the definitions of axe and knife — namely, that both feature a sharp blade and a handle — does not serve to exclude this particular hatchet from the latter category.  As discussed above, the definition of "knife" is broad enough to include the weapon Romero used in the context of the menacing statute.

¶ 23      We therefore conclude that there is probable cause to believe that the weapon Romero used is a knife under the menacing statute, and that the jury must ultimately decide whether Romero committed the crime of menacing "by the use of a firearm, knife, or bludgeon."

## V. Disposition

¶ 24 The order is reversed, and the case is remanded for the district court to reinstate the charge of felony menacing.

JUDGE FREYRE and JUDGE PAWAR concur.